FUSSELL, CARROLL W., Associate Judge.
This appeal is by the plaintiff below from a final decree, entered after the conclusion of testimony taken before the Chancellor, dismissing the complaint which sought to have the Court enjoin the defendant, Brow-ard County, from enforcing a zoning classification as to plaintiff’s property, and also to require the defendant to re-zone plaintiff’s property from a B-l neighborhood business district to a B-2 community business district.
The Chancellor bases his decision on the principle in his finding that if the action of the County Board was not clearly correct, that its correctness was at least fairly debatable, and that under such circumstances the Court may not substitute its judgment for that of the zoning authority.
In reviewing this case this Court is limited to the facts as disclosed by the transcribed testimony taken before the Chancellor and has no knowledge of other possible matters which may have been known to the County Board or the Chancellor in arriving at their respective decisions. On the whole, there is very little conflict in the facts so the Chancellor’s ruling is essentially one of law rather than on a finding as to disputed fact.
The undisputed facts show that the subject property is about one-half mile in length and lies on the south side of West Broward Boulevard, a 4-lane or arterial highway 100 feet wide running west from *622 and outside the city limits of Fort Lauder-dale, Florida. A map introduced in evidence by the appellant and not contradicted, shows principally a one and one-half mile stretch of West Broward Boulevard running from 27th Avenue to 40th Avenue. The Fort Lauderdale city limits are at 24th Avenue, and 40th Avenue is a major interior Federal Highway running north and south. Subject property lies between 31st and 35th Avenues. About a half a mile of this one and a half mile strip is on the east of subject property and about a half mile on the west. This map shows the zoning on West Broward Boulevard and also on adjacent or surrounding highways, including a similar arterial highway south of and parallel to subject property called Davie Boulevard, which is 70 feet in width. Subject property is the only business property shown on either West Broward Boulevard or Davie Boulevard, or in fact on the map anywhere, which is classified B-l. All the other business property is classified either B-2 or B-3. The one-half mile strip adjacent to and east of subject property, the one-half mile strip adjacent to and west of subject property, and the entire one and one-half mile strip directly across West Broward Boulevard on the north side of subject property, and the one-half mile strip on each side of Davie Boulevard to the south of and parallel to subject property, are all classified B-2.
The distinction between B-l and B-2 classification seems to be very great. The B-l classification in which subject property was placed deals with neighborhood businesses and permits certain retail stores and services which provide daily needs for a small neighborhood. The B-2 classification is for community businesses and is a great deal broader in nature and scope. There are listed and permitted under the B-2 type of zoning classification 15 types of office uses, 11 types of non-commerical uses, 16 types of amusement uses, 11 types of water-related uses, dry cleaning businesses, hotel, motel, multiple dwelling houses, rooming houses and boarding houses, none of which are permitted under the B-l classification. Also, 25 t3'pes of retail stores are permitted under the B-l classification; these and 31 additional under the B-2. 6 types of personal services are permitted under the B-l classification; all these and 12 more under the B-2. 15 types of miscellaneous uses are permitted under the B-l classification; all these and 17 more are permitted under the B-2.
The record does not indicate the basis of the decision by the County Commissioners to zone subject property differently from all surrounding, adjacent and apparently similar property, except possibly the objections of neighboring land owners and voters. The Planning and Zoning Board has recommended that subject property be zoned B-2 and apparently has not changed this recommendation. The first resolution before the County Commissioners was drawn so as to give subject property a B-2 classification, but objections being made, the County Commissioners postponed action on this resolution and gave notice of a public hearing on this question. It appears that a number of neighboring land owners appeared before the County Commissioners and voiced their objections, and as a result subject property was zoned B-l.
A traffic, a fire and a sanitary expert testified for the plaintiff that considering the character, elevation, typography, depth, accessibility and traffic concentration of subject property and the surrounding and adjacent property, there was no difference between the properties from the traffic standpoint, fire hazard standpoint or sanitary standpoint, and the difference in classification would not promote the public welfare, public safety or public health insofar as these matters were concerned.
A local real estate broker and appraiser testified that in his opinion classification of subject property as B-l, when all the similar surrounding property was classified as B-2, would penalize it and would result in *623 its economic obsolescence. Another witness for plaintiff testified that out of fifty inquiries he had had from prospective purchasers, 15 were for B-l businesses and 35 for B-2 businesses, and that no one wanted subject property when B-2 property was available on each side and across the street from it. It was also testified that 41% of the businesses on this one and one-half mile strip were B-l businesses.
The defendants offered only two witnesses, one of whom was an inspector who was reluctantly declared qualified as an expert by the Chancellor, and who testified that in his opinion the best type of zoning for subject property was B-l. He admitted that the Planning Board for whom he worked had recommended to the County Board that subject property be classified as B-2. The other witness offered by the defendants was one of the objecting neighboring land owners who stated that he objected to some of the uses under the B-2 zoning classification, but there were others which he did not object to. He stated that there was no buffer between his property and the subject property and he thought there should be, but no evidence was offered as to any greater need for a buffer strip between residential property and B-l property than between residential property and B-2 property.
The attorney for the defendant contends in his brief that the reasonableness of the B-l classification of subject property is fairly debatable because, (1) there is no buffer between it and the adjacent residential property; (2) subject property is only 125 feet in depth; (3) 41% of the businesses in this territory are B-l businesses, so that subject property would not suffer; (4) the difference between the B-l and B-2 ■classification is so small that the B-l classi-•cation would not harm subject property.
In answer to these it might be stated briefly, as to (1) : No evidence is offered that a buffer is needed any more as to a B-l than as to a B-2 zoning classification, and also the map introduced in evidence indicates that the lands directly across Broward Boulevard from the subject property, as well as the strip on each side of Davie Boulevard, south of and parallel to subject property, are each zoned B-2 and yet have no buffer or alleyway between them and adjacent property zoned as residential.
As to (2) : Depth of subject property is 125 feet and the map indicates that the depth of the one-half mile strip on both sides of Broward Boulevard adjacent to and east of the subject property, and of the strip on each side of Davie Boulevard south of and parallel to the subject property, and which is all classified as B-2, has generally 5 to 20 feet less depth than subject property.
As to (3): The undisputed evidence shows that subject property is largely vacant and undeveloped, and in the opinion of a local real estate broker and appraiser based on actual inquiries made to him, this discrimination in classification between subject property and adjacent property would penalize subject property and would result in its economic obsolescence.
As to (4) : As indicated above, the provisions of the two classifications as between B-l and B-2, and set out in the appendix of appellant, indicate vividly the great difference in uses between the two classifications.
It can hardly be doubted that the fairly debatable doctrine is the law of Florida in cases of this kind. City of Miami Beach v. Hogan, Fla., 63 So.2d 493; City of Miami Beach v. Prevatt, Fla., 97 So.2d 473; Snipes v. City of Hialeah, Fla.App., 114 So.2d 214.
In passing upon this matter, however, each case must be determined on its own facts. 101 C.J.S. Zoning § 15, p. 703. City of Miami Beach v. Ocean and Inland Co., 147 Fla. 480, 3 So.2d 364.
*624 The approach to the reasonableness and difference in the classification is expressed in 101 C.J.S. Zoning § 71, page 813.
“§ 71. The classification of property for the imposition of different restrictions must rest on some .rational basis. A zoning regulation creating a classification without a real and substantial relation to the considerations, one or more, to be advanced by zoning is arbitrary and unreasonable; and a classification permanently restricting the enjoyment of property to such an extent that it cannot be utilized for any reasonable purpose is unreasonable and confiscatory. * * *
“Uniformity of classification is necessary to avoid arbitrary action, but dissimilar treatment does not inevitably bespeak capriciousness. Where the situaion of a piece of property appears to be the same as that of surrounding property and no facts justifying its special treatment are apparent, placing it in a different classification from that of the surrounding territory will on its face appear arbitrary, capricious, and unreasonable; but, where the piece of property is by its situation distinguishable in character from the surrounding or adjoining property, there is no apparent unreasonableness in its different classification.”
Administrative Boards are not and cannot be given free rein to make any zoning classification which may suit their whim or caprice at the time and without regard to its reasonableness, for if the action taken by the administrative board is not fairly debatable it will be reversed by the courts. In the case of Town of Surfside v. Normandy Beach Development Co., Fla., 57 So.2d 844, under the zoning restrictions the subject property was zoned for one or two family dwellings. The plaintiffs sought removal óf these restrictions. The evidence showed that on. the east of the property was the 6-story Coronado Hotel, on the west vacant property zoned for apartment and hotel, on the north 2-story apartment buildings, and on the south Collins Avenue. The court determined that under these facts the ordinance was arbitrary and unreasonable and ordered that a permit for gas station be issued.
In the case of Lippow v. City of Miami Beach, Fla., 68 So.2d 827, the lower Court upheld the city ordinance zoning the subject property as hotel and apartment instead of business. The subject property was bordered on the. north and west by a parking area, and on the south and across the street the property was zoned as business. The appellate court held that this was not fairly debatable and reversed the lower Court. Commenting on this, the Court said:
“(1, 2) We are reluctant to upset the legislative will but a careful examination of the situation presented in this case forces us to the conclusion that there is no basis whatever for the present zoning of appellants’ property. The question is not fairly debatable. There is no other property in the immediate area identically situated. It is not the presence of the parking lots alone that renders the present zoning invalid because we realize full well that under certain conditions a parking lot might be an advantage rather than a disadvantage to an apartment or hotel. This fact, however, coupled with the businesses on all other sides and the complete change in the character of the neighborhood, renders the present zoning unconstitutional and void as to appellants’ property. Stengel v. Crandon, 156 Fla. 592, 23 So.2d 835, 161 A.L.R. 1228. There is simply no relation whatever between the present zoning of the subject property and the general welfare of the community.”
In commenting on administrative boards generally, the Court said in the case of *625 City of Miami Beach v. Lachman, Fla., 71 So.2d 148:
“While Village of Euclid, Ohio v. Amber Realty Company approved the zoning and segregation of private property into residential, business, and industrial districts, it was as equally emphatic that if such zoning did not have some substantial relation to the public health, safety, morals, and general welfare, it would be held to be arbitrary, unreasonable annd unconstitutional. There is no warrant whatever in this, or any other, case to support the thesis that zoning boards are infallible and that any kind of a zoning proposition they promulgate will be upheld. In other words, zoning boards are in the same category as all other administrative boards. Their ordinances and regulations will be given serious consideration and their judgments great weight, but where it is conclusively shown that they deprive one of his property without due process or otherwise infringe on State or Federal constitutional guarantees unreasonably, such ordinances and regulations cannot be said to be reasonably debatable and will be stricken down.”
In the case of City of Miami v. Hollis, Fla., 77 So.2d 834, the Court said:
“(1, 2) We are not unmindful of the rule adopted in this jurisdiction that the Court ordinarily will not substitute its judgment for that of an administrative board in a zoning matter where the question presented is fairly debatable. The master found that the question presented was beyond debate or any reasonable difference of opinion, or in other words, that the allegations of the bill of complaint had been established beyond question. The Chancellor affirmed this report in full. The evidence was sufficient to justify the report of the master and the final decree of the Chancellor.”
The lower Court was reversed and rezoning ordered by the Supreme Court in the case of Tollius v. City of Miami, Fla., 96 So.2d 122. In this case the Court said:
“We are well aware of the position we have taken that lines of demarcation 'between zones must be placed somewhere and that there is no force to the argument that property situated on one side of a street need by proximity alone be put in the same zone with property on the other side. City of Miami Beach v. Ocean & Inland Co., 147 Fla. 480, 3 So.2d 364. But we find no conditions in the present litigation calling for application of the rule because in the setting we have undertaken to depict by the sketch there is too much similarity between the parcel on which an apartment motel now exists and the property on which the appellant proposes to build one, and between appellant’s property and that which a restaurant will occupy.
* ❖ * * * *
“Arrayed against the faint showing of the city are the physical facts obvious from the sketch, the overwhelming testimony introduced by the appellant and the additional circumstances that the parcel directly across the street had been purchased by a corporation for the operation of a Howard Johnson restaurant because of its suitability as a site for such a commercial enterprise and that the regulations had been relaxed to permit its use for that purpose.
❖ * * # * *
“(1) There must be a substantial and reasonable relationship between the need for zoning restrictions and the public health, morals, safety or welfare to justify interference, by exercise of the police power, with an owner’s right to the enjoyment of his property. Only in the presence of such necessity will he be required, ‘to ■ make *626 a personal sacrifice for the good of the people. City of Miami Beach v. Lachman, Fla., 71 So.2d 148.
* * * * * *
“We are impelled to the view that the decree should be reversed with directions to grant appellant the relief he sought.”
In the case of City of Eau Gallic v. Holland, Fla., 98 So.2d 786, the Court held that designation of an area as residential which was primarily commercial was invalid and void, and that the refusal to grant a trailer license to the plaintiff at the same time granting a license to others similarly situated was arbitrary and discriminatory.
The instant case is not one where there is a change in classification and where there must of necessity be an ending of one zone and a beginning of another zone, but in this case the subject property is entirely surrounded by property which, according to the evidence, is similar in every ■respect and any slight differences that may exist are also existent in a large part of the surrounding and adjacent property bearing a different zoning classification. There is no evidence in the record of any reason or fairly debatable question as to why the County Commissioners should have refused to accept the recommendation of the Zoning and Planning Board of Broward County and arbitrarily and without reason zoned the subject property as B-l when all the surrounding and adjacent property of similar character on each side and across the street, as well as in the neighborhood, was zoned as B-2. In matters of this kind where the action of the zoning authority has been determined to be unreasonable and void, we have held that the matter should be re-submitted to the zoning authority with directions to determine the proper classification of the property. City of Tampa v. Consolidated Box Co., Fla.App., 110 So.2d 446; City of Punta Gorda v. Morningstar, Fla.App., 110 So.2d 449; Wood v. Twin Lakes Mobile Homes Village, Inc., Fla.App., 123 So.2d 738.
Reversed.
KANNER, Acting C. J., and WPIITE, J., concur.