214 Va. 235 (1973)
THE BOARD OF SUPERVISORS OF FAIRFAX COUNTY, ET AL.
v.
DEGROFF ENTERPRISES, INC., ET AL.
Record No. 8118.
Supreme Court of Virginia.
August 30, 1973.
John M. Ferren [D.C.] (Duane L. Searles, Assistant County Attorney for Fairfax County; Dorothy J Glancy [D.C.]; Hogan & Hartson [D.C.], on brief), for appellants.
Marc E. Bettius; John T. Hazel, Jr. (Grayson P. Hanes; Hazel, Beckhorn & Hanes; Bettius & Langen, on brief), for appellees.
Present, All the Justices.
Amendment to zoning ordinance would require developer to build at least 15% of dwelling units as low or moderate income housing within definition, and at prices, promulgated from time to time by administrative agencies. Although providing low and moderate income housing serves legitimate public purpose, amendment which rests on police power is deficient. It is socio-economic zoning and attempts to control compensation for use of land and improvements. More importantly the amendment would take or damage property for public use without just compensation.
Appeal from a decree of the Circuit Court of Fairfax County. Hon. William G. Plummer, judge presiding.
HARMAN
HARMAN, J., delivered the opinion of the court.
The question presented by this appeal is the validity of amendment 156 (the amendment) to the Fairfax County Zoning Ordinance (ordinance) which became effective on September 1, 1971.
When the amendment, which consists of 39 typewritten pages, is stripped of detail, it requires the developer of fifty or more dwelling units in five zoning districts (RT-5, RTC-5, RT-10, RTC-10 and RM-2G) to commit himself, before rezoning or site plan approval, to build at least 15% of these dwelling units as low and moderate income *236 housing within the definitions promulgated from time to time by the Fairfax County Housing and Redevelopment Authority (FCHRA) and the United States Department of Housing and Urban Development (HUD). Under the amendment the housing units designated as low and moderate income units can be sold or rented only to persons of low and moderate income as defined by FCRHA and HUD regulations and the sale or rental price for such units cannot exceed the amount established as price guidelines by those agencies.
After a lengthy hearing the trial court found the amendment invalid on the grounds that the Board of Supervisors exceeded its authority under the zoning enabling act, Code | 15.1-486 et seq., that the amendment constituted an improper delegation of legislative authority, and that the amendment was arbitrary and capricious.
The hearing before the trial court clearly demonstrated both a demand and an urgent need for housing units for low and moderate income families in Fairfax County. Indeed, the uncontroverted evidence indicates that the need then existed there for 10,500 such dwelling units.
The Board of Supervisors of Fairfax County (Board) on the basis of this need, would have us hold the amendment valid on the ground that it "facilitates 'creation of a convenient . . . and harmonious community' and is essential to the 'health, safety, . . . [and] general welfare of the public.'" In support of this proposition the Board cites Code | 15.1-489 in which these purposes for zoning ordinances are enumerated.
That a problem exists in the need for low and moderate income housing has been recognized for many years. In 1937, in an effort to help meet this need, the Congress passed the United States Housing Act, Act of Sept. 1, 1937, c. 896, 50 Stat. 888.
The following year the General Assembly, to implement the low income housing provisions of this federal act, passed the Housing Authorities Law, Acts of Assembly, 1938, c. 310, which now appears, as amended, as Code | 36-1 et seq.
In Mumpower Housing Authority, 176 Va. 426, 11 S.E.2d 732 (1940), we considered the Housing Authorities Law and found it to be a constitutionally valid exercise of the police power. In doing so we recognized that slum eradication and the erection of low income public housing was "a matter of vital concern to the public and to the State." Id. at 437, 11 S.E.2d at 735. *237 
Today, as a part of the nationwide effort to solve the housing problem upon which billions of dollars of public funds have been expended, redevelopment and housing authorities exist in most, if not all, of the urban areas of the Commonwealth and in many of the nonurban areas.
Thus it would appear that providing low and moderate income housing serves a legitimate public purpose. The question, then, becomes whether this public purpose can be accomplished by the amendment to the ordinance which rests upon the police power.
The principles of zoning law are well settled in Virginia. This court, speaking through Mr. Justice I'Anson, in Board of Supervisors Carper, 200 Va. 653, 107 S.E.2d 390 (1959), summarized these established principles as follows:
{"The general principles applicable to a judicial review of the validity of zoning ordinances are well settled. The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals or general welfare. The court will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained. Board of County Supervisors of Fairfax County Davis, 200 Va. 316, 322, 106 S.E.2d 152, 157; West Bros. Brick Co. City of Alexandria, 169 Va. 271, 288, 192 S.E. 881, 888 (appeal dismissed 302 U.S. 658, 58 S.Ct. 369, 82 L.Ed. 508, rehearing denied 302 U.S. 781, 58 S.Ct. 480, 82 L.Ed. 603). The exercise of the police power is subject to the constitutional guarantee that no property shall be taken without due process of law and where the police power conflicts with the Constitution the latter is supreme, but courts will not restrain the exercise of such power except when the conflict is clear. West Bros. Brick Co. City of Alexandria, (169 Va. at 281, 192 S.E. at 885)."
{"* * * '[The] purpose of zoning is in general two-fold: to preserve the existing character of an area by excluding prejudicial uses, and to provide for the development of the several areas in a manner consistent with the uses for which they are suited. The regulations *238 should be related to the character of the district which they affect; and should be designed to serve the welfare of those who own and occupy land in those districts.' See also 1 Yokley, Zoning Law and Practice, | 10, pp. 12, 13." 200 Va. at 660, 107 S.E.2d at 395.
In Carper we held invalid a zoning ordinance which had as its purpose the exclusion of low and middle income groups from the western areas of Fairfax County. The effect of this decision is to prohibit socio-economic zoning. we conclude that the legislative intent was to permit localities to enact only traditional zoning ordinances directed to physical characteristics and having the purpose neither to include nor exclude any particular socio-economic group.
In Boggs Board of Supervisors, 211 Va. 488, 178 S.E.2d 508 (1971), we found that a zoning ordinance which had the effect of completely depriving the owner of the beneficial use of his property by precluding all practical uses to be unreasonable and confiscatory and, therefore, illegal.
More recently in Fairfax County Columbia Pike, Ltd., 213 Va. 437, 192 S.E.2d 778 (1972), we followed our earlier holding in Mooreland Young, 197 Va. 771, 91 S.E.2d 438 (1956), that the zoning enabling act does not authorize the governing body of a county to control compensation for the use of lands or the improvements thereon.
When the amendment is measured by these legal standards, we find it deficient.
The amendment, in establishing maximum rental and sale prices for 15% of the units in the development, exceeds the authority granted by the enabling act to the local governing body because it is socio-economic zoning and attempts to control the compensation for the use of land and the improvements thereon.
Of greater importance, however, is that the amendment requires the developer or owner to rent or sell 15% of the dwelling units in the development to persons of low or moderate income at rental or sale prices not fixed by a free market. Such a scheme violates the guarantee set forth in Section 11 of Article I of the Constitution of Virginia, 1971, that no property will be taken or damaged for public purposes without just compensation.
Affirmed.