## Richmond

**BOARD OF SUPERVISORS OF FAIRFAX COUNTY V.
ROY G. ALLMAN, TRUSTEE, ET AL.**

January 20, 1975.

Record Nos. 730991 and 740029.

Present, All the Justices.

*Frederic Lee Ruck, County Attorney (George A. Symanski, Jr., Assistant County Attorney, on brief), for appellant.*

*John T. Hazel, Jr. (Francis A. McDermott; Hazel, Beckhorn & Hanes, on brief), for appellees.*

Harrison, J., delivered the opinion of the court.

Roy G. Allman, James H. Swart, Mary F. Swart, William L. Bryant, Frederick A. Babson, Jr., M. Seth Horne and William B. Ingersoll, Sr., hereinafter called Allman, filed their zoning application C-222 with the appropriate officials of Fairfax County, Virginia, requesting that a tract of land in the County containing 302.96 acres, more or less, be rezoned from the

existing RE-1 zoning category (which permits one single-family dwelling per acre) to the PDH-3 zoning category (which permits a minimum of three planned development dwelling units per acre). The existing RE-1 zoning permitted 273 single-family homes on the subject property. Allman proposed 988 units under the PDH-3 category.

The Planning Commission of Fairfax failed by a tie vote to recommend either denial or approval of Allman's application and, accordingly, it was forwarded to the Board of Supervisors of Fairfax County, hereinafter called the Board, without recommendation of the Planning Commission. The Board declined to amend its zoning ordinance, by a vote of five to three, and denied the application.

Thereafter Allman filed a motion for a declaratory judgment in the court below, alleging, among other things, that the action of the Board in refusing to rezone his land and in denying his application was illegal, arbitrary, capricious, unlawful and without substantial relation to the public health, safety or general welfare. Following an extensive hearing, the trial court held that the Board's failure to amend was unlawful and entered an order on July 23, 1973, directing that the Board, on or before September 11, 1973, reconsider its action. At this stage of the proceeding the Board deliberated and, disagreeing with the decision of the trial court, filed its notice of appeal and assignments of error on August 21, 1973, and its petition for appeal with this court on November 23, 1973.

The Board failed to reconsider the rezoning application as directed by the lower court, and Allman petitioned the court for further relief. On November 15, 1973, the court below ordered "that the subject property be and it hereby is, rezoned to the *PDH-3* District, and Defendant Board is directed to cause its agents to make appropriate notations upon the zoning records of Fairfax County in accord with this Order". The implementation of the order was stayed pending appeal and final disposition thereof. The Board duly filed its notice of appeal and assignments of error.

Allman filed a motion to dismiss the Board's petition for appeal of the order entered July 23, 1973 upon the ground that it was not a final order. The Board's position is that this order adjudicated the principles of the cause and was appealable. In view of the stay granted by the court on November 15, 1973, and

the status of the records before this court, it is unnecessary for us to consider the motion.

The dispositive issues here are whether the Board's refusal to rezone Allman's land was without substantial relation to the public health, safety and general welfare, and whether the trial court exceeded its authority in rezoning the property.

The Allman property is located in the western portion of Fairfax County immediately adjacent to the Loudoun County boundary line. The land lies on both sides of Highway #228, about one-half mile south of its intersection with Route 7. Highway #604 is contiguous and one of its northern boundaries. Sugarland Run is an eastern boundary. The Hiddenbrook Subdivision is on the south. To the west and across the county line in Loudoun is the residue of the Allman property, 100 acres, which has Highway #625 as one of its northern boundaries. The property is approximately ½ mile north of the Town of Herndon and 2.5 miles northwest of Reston.

This court is not a stranger to the problems attending the phenomenal growth of Fairfax County in recent years. We have considered numerous cases detailing the efforts of the governing body of the County to cope with these problems. The original pressures emanated from Washington, D. C., and therefore the eastern portion of the County developed first and more rapidly than its western portion. In 1956 the Board endeavored to restrict development in the western two-thirds of Fairfax by zoning the area for one and two acre lots. Its rationale was that public facilities in the developed eastern one-third required prior attention. This policy of restrictive large lot zoning was disapproved by us in *Board of Supervisors* v. *Carper*, 200 Va. 653, 107 S. E. 2d 390 (1959). Reston, described as an innovative concept in planned residential communities, was formed in 1962. At about the same time the Town of Herndon, designated as a rural community-commercial center, began its growth.

In 1963 the County adopted the Western County Development Plan which anticipated surburban clusters around Reston, Herndon, Sugarland Run, and other areas near the Allman property. This plan envisioned developments at densities of approximately 2.5 units per acre. During the 1960's the County was divided into planning districts. The Allman property is located in the Upper Potomac Planning District, which contains 43,699 acres and includes Reston and Herndon. The Upper

Potomac Plan is a detailed comprehensive land use plan, also referred to as the Master Plan, and was adopted by the Board in 1970. It provides for a surburban density cluster of 2.5 units per acre along Route 228 between Herndon and Route 7, and this cluster includes the Allman property. In effect it continued the cluster concept of the Western County Development Plan.

It is conceded that the density and use requested by Allman is a reasonable use of his property. Rosser H. Payne, a professional planner, and former employee of Fairfax County for 17 years, testified that it would be an error and a complete reversal of County policy to retain this property in the RE-1 category. Payne also said that there were public facilities sufficient to support the Allman application in every respect and that the application "is in full accord with everything that has been written by the county with regard to this western county Upper Potomac planning district plan, both in the original plan and the revised edition".

The evidence further shows that while the Allman property could be developed without loss if it remained in the RE-1 category, its value, as of the time of trial, if zoned R-12.5 or PDH-3 (either category being acceptable to Allman) was approximately $2,467,000 greater than if it remained in the RE-1 category. It was clearly established that the property is suitable for a more valuable use than RE-1, and that the County has consistently planned a more valuable use for it.

It is also conceded that a critical housing need for low and moderate income families exists in the County. This need was noted by us in *Fairfax County* v. *DeGroff,* 214 Va. 235, 236, 198 S. E. 2d 600, 601 (1973). The evidence in that case was such that Mr. Justice Harman was prompted to state: "The hearing before the trial court clearly demonstrated both a demand and an urgent need for housing units for low and moderate income families in Fairfax County. Indeed, the uncontroverted evidence indicates that the need then existed there for 10,500 such dwelling units". It was estimated by a witness that of the land available in the Upper Potomac Planning District for development an overwhelming percentage is zoned to require one acre or more per dwelling unit, and that this results in the vast majority of housing being built for those enjoying a high income bracket.

While the witnesses introduced by Allman testified that, by

and large, adequate public facilities were available or would become available as the project developed, the witnesses for the Board stressed the present inadequacy of all public facilities in the area.

Route #228 is a Virginia state primary highway from Herndon north to Route 7. Mr. J. D. Pammel, Director of the Board's Division of Zoning Administration, testified that this road had a high priority for future improvement and had been designated as a four-lane, depressed median, divided highway in the state primary system. Presently it is a two-lane primary road carrying approximately 22% of its capacity. It has been noted that the Loudoun County portion of the Allman property adjoins Virginia State Highway #625 on the north. In addition, Sugarland Road (Route 604) adjoins the property on the west. The developer would provide the necessary roads, sidewalks, streets and alleys within the development at his own cost.

Water supply for the property would come from the same source that presently serves Reston and Herndon, that being the Goose Creek system of Fairfax City. It does not appear from the evidence that there is any shortage of water or that there should be any problem in providing the development with an adequate water supply.

The evidence of the Board was that the schools were not adequate to take care of the increase in school population that would be generated by the development. However, Mr. Thomas Whitworth, an official of the Fairfax County school system, testified that this increase was in accord with the numbers anticipated in the County's comprehensive plan and that it would be accommodated. Apparently this accommodation would occur in the same manner the County has accommodated the steady increase in school population in other sections of the County. This could be done, Whitworth testified, by an accelerated building program, temporary classrooms, extending the school day, going on a double shift, realignment of school district lines and transporting children from congested areas to areas where there were vacant or unfilled classrooms.

Fire service for the development would be provided by the Herndon Station located 2 miles from the property. The Board's witness, George H. Alexander, Director of Fire and Rescue Service for the County, said the manpower-response distance did not meet the American Insurance Association criteria for the

lowest rates. However, he testified the availability of fire and rescue service was not critical. Obviously the fire and rescue services that would be provided Allman would be roughly the same as that provided numerous other areas in the County.

Library facilities serving this area of the County are located in the Town of Herndon and in Reston.

A major trunk sewer system owned and operated by Fairfax County runs through the Allman property. It is this system that serves a part of Reston and the Town of Herndon. Treatment for the system is provided by the District of Columbia at the Blue Plains Treatment Plant. At the time Allman filed his application for rezoning there were no restrictions on treatment capacity at the Blue Plains Plant. An allocation system now exists throughout this treatment area to provide orderly sewer capacity distribution until additional treatment facilities become available. The Allman property would be in the same position regarding sanitary sewer capacity as Reston and the Tyson's Corner area. Mr. Jack Liedl, acting director of the Department of Public Works of Fairfax County, testified that the lines located on the Allman property were adequate for the proposed use and that trunk sewer capacity was available. It is noted that the sewer line in question was once a part of Sanitary District 14 which was established to provide sewer service for the Town of Herndon and the area of the County in which the Allman property is located.

There was evidence before the lower court from which it reasonably could have found that at the time the Board considered the Allman application the necessary public facilities were either available or would become available by the time the project had been developed. The Board had no policy that all necessary public facilities be provided in advance of high density zoning. As a practical matter, and because of the ever-existing problem of finance, the construction and installation of necessary public facilities usually follow property development and the demand by people for services. At the time Allman's application was denied by the Board one of its members, addressing himself to it, said:

"SUPERVISOR MAJER: Mr. Chairman, I'm concerned about this. I've heard it said repeatedly that public facilities are not available there. Well, the sewer is available and many

of the other public facilities are available. Without people living out there the County is not going to build schools. Without people to drive on the roads, the Highway Department of the State of Virginia is not going to build highways. We know from past experience that the improvements to the highway facilities follow the development, and as long as there are roads in the developed areas of this County that need improvement, the Highway Department is not going out into the country and build new four lane roads. We've been hollering about them doing that down in Southside, Virginia, for years. I just think it's . . . When we say it's premature with no public facilities, nobody has ever come up yet and said what is the right time? When will the public facilities be there? Do we put the public facilities in and then zone it? No. We never have and we are never going to."

We conclude from the record and the accompanying exhibits that the Board denied the Allman application primarily because of its timing, rather than because of its impact on public facilities. Several members of the Board observed that the application was premature. The trial court made no reference to public facilities in its opinion or orders. It found that the zoning and density sought by Allman was permitted under the County's applicable comprehensive land use plan; that category PDH-3 does not differ substantially in impact and substance from a R-12.5 district; and that Allman, although entitled to equal treatment in the consideration of his application, had been subjected to discrimination, had not been accorded the same treatment as other applicants for rezoning, and had been deprived of substantial property rights. It held that the denial of Allman's application for a higher density zoning was not reasonably related to the public health, safety and welfare and was arbitrary and capricious.

The Board apparently looks with favor upon the planned unit development and prefers it to the standard, conventional subdivision. While there is no great difference in category R-12.5 and the PDH-3 category, it is the policy of the County to encourage PDH-3.[1] Evidence of this fact is its admitted

---

[1] However, we observe here, as we did in *Fairfax County* v. *Lukinson*, 214 Va. 239, 198 S. E. 2d 603 (1973), the question of the validity of PDH zoning is not before us and we express no opinion thereon.

encouragement of the establishment and growth of Reston, described as a "new town", completely different from any other type of development. With the exception of size, a PDH-3 development differs little in concept from Reston.

This was the background of the Allman application. He was seeking a higher density use of his property and proposed a development he believed would accord with the philosophy and planning of the Board. He sought the density permitted by the County's comprehensive or Master Plan. We note here that a comprehensive or master plan does not have the status of a zoning ordinance. It is advisory only and serves as a guide to a zoning body.

The Allman tract is not located in an isolated area of the County. Its southern boundary is approximately one-half mile from the northern boundary of the Town of Herndon. A major community shopping center is on a site 2,500 feet to the north. Lying immediately between the Allman tract and the Town of Herndon is the Hiddenbrook Subdivision zoned R-12.5 by the Board in 1960, 1965 and 1966. To the northwest of Allman lies Sterling Park, a subdivision in Loudoun County with a density of up to 4 dwelling units per acre. To the south of Allman and on the east side of Route 228 is situated the Herndon High School. A mile east of the Allman tract is the Clinch property containing 64 acres, zoned R-12.5. Reston lies approximately 2.5 miles southeast of Allman.

On the question of the impact on the public facilities of Fairfax by rezoning of Allman from RE-1 to a greater density it will be noted that Reston consists of over 7,000 acres, having a present population in the neighborhood of 25,000 and a planned population of between 72,000 and 78,000. It is in the same area as Allman and is serviced by the same public facilities. Mr. Pammel testified that it was the policy of Fairfax County to promote Reston where it had planned for growth to occur. He further said: "[W]hat we're trying to say in this whole arena of development, that growth should take place properly within Reston. That is, it was planned for in Reston. It's a new town, and in the longer range, these other areas on the periphery of Reston and Herndon should develop". The obvious inference is that Allman and other property owners zoned RE-1 should await the full development of Reston before seeking a rezoning, even

though the proposed zoning is in accordance with the County's Master Plan.

As evidence of the preferred status accorded Reston, Allman's counsel, in his brief and at the bar of this court, said that during the time his client's application for rezoning had been under consideration Reston has had two applications for rezoning approved. These applications involved 625 acres, 2,575 units and will generate approximately 2,000 students to impact the same schools, roads and public facilities that the Board objects to being impacted by the Allman development. The Reston tracts were rezoned to an approximate density of 4 units per acre. The adjoining Hiddenbrook development consists of 151 acres, and its R-12.5 zoning permits approximately 2.69 lots per acre.

But even more significant than the high density granted in the areas of Hiddenbrook, Herndon, Sterling Park and Reston, which either adjoin or are in close proximity to Allman, is the action of the Board taken on the application of the Clinch Corporation for a rezoning of its land. This corporation owned 64.85 acres of land located on the west side of Route #680, east of the Herndon High School and approximately one mile east of Allman. The tract had also been zoned RE-1. The Clinch application was filed in April, 1971. Allman's application for rezoning was denied by the Board in October, 1971. The Clinch application was granted in December, 1971, and its zoning category was changed from RE-1 to R-12.5. Both the staff and the planning commission recommended that the application be granted. Mr. Pammel admitted that the Clinch development involved the same problems for the County as did Allman's development. In fact Pammel said that a planned unit development such as Allman proposed is more favorable to the County in terms of cost benefit analysis than a standard conventional subdivision such as Clinch.

Other than the difference in size of the two tracts, the Board's only explanation as to why two months after refusing Allman the Board rezoned Clinch is that it made a mistake. We find nothing in the record to indicate that the Clinch rezoning to a greater density did not represent the considered and best judgment of the Board, the staff and the planning commission. Subsequently an effort was made by the Board to rezone the Clinch property from R-12.5 back to RE-1. This effort was unsuccessful, the court holding that the alleged mistake was not

of such significance as to merit a change in zoning, and further noting that the staff had recommended a greater density than RE-1. The trial court also found as a fact that the evidence did not support such an impact upon sewer and school facilities as to merit a change from R-12.5 back to RE-1.

The Board has not contented itself with encouraging and promoting Reston's growth, as has been its policy. It has denied a request by Allman for a greater density use of his land, notwithstanding both prior and subsequent to such denial it granted a greater density use to others owning property adjoining or near the Allman land. The evidence introduced, and the argument advanced by the Board, that the County's public facilities would be unduly impacted by the Allman rezoning was countered, not only by testimony of witnesses, but negated by a showing of the Board's other rezonings which had the same, or even greater, impact than would have resulted from the Allman development.

In the instant case we are not dealing directly with a comprehensive zoning ordinance. Rather we are dealing with the legislative action of a Board of Supervisors in refusing to increase the permissible development density of certain property to the category established by a duly adopted comprehensive or master land use plan. The effect of the action of the Board was to reaffirm the zoning of the Allman land in the RE-1 category. This was a legislative act performed by a legislative body.

The general principles which control our decision have been well and often stated. In *County of Fairfax* v. *Parker*, 186 Va. 675, 680-81, 44 S. E. 2d 9, 11-12 (1947), we held:

> "The benefits of proper zoning laws are everywhere recognized. We need not stop to detail them. Neither is it necessary that we restate the principles governing the validity of such laws. Suffice it to say that if reasonable they are construed to be a lawful exercise of the State's police power. If their reasonableness is fairly debatable, the legislative judgment stands. For a discussion of the underlying principles see *Euclid* v. *Ambler Realty Co.*, 272 U. S. 365, 47 S. Ct. 114, 71 L. Ed. 303, 54 A. L. R. 1016; *West Bros. Brick Co.* v. *Alexandria*, 169 Va. 271, 192 S.E. 881. . . ."

In *Board of Supervisors* v. *Carper*, 200 Va. 653, 660, 107 S. E. 2d 390, 395 (1959), the court said:

"The general principles applicable to a judicial review of the validity of zoning ordinances are well settled. The legislative branch of a local government in the exercise of its police power has wide discretion in the enactment and amendment of zoning ordinances. Its action is presumed to be valid so long as it is not unreasonable and arbitrary. The burden of proof is on him who assails it to prove that it is clearly unreasonable, arbitrary or capricious, and that it bears no reasonable or substantial relation to the public health, safety, morals, or general welfare. The court will not substitute its judgment for that of a legislative body, and if the reasonableness of a zoning ordinance is fairly debatable it must be sustained. *Board of County Supervisors of Fairfax County* v. *Davis*, 200 Va. 316, 322, 106 S. E. 2d 152, 157; *West Bros. Brick Co.* v. *City of Alexandria*, 169 Va. 271, 288, 192 S. E. 881, 888 (appeal dismissed 302 U. S. 658, 58 S. Ct. 369, 82 L. ed. 508, rehearing denied 302 U. S. 781, 58 S. Ct. 480, 82 L. ed. 603). The exercise of the police power is subject to the constitutional guarantee that no property shall be taken without due process of law and where the police power conflicts with the Constitution the latter is supreme, but courts will not restrain the exercise of such power except when the conflict is clear. *West Bros. Brick Co.* v. *City of Alexandria, supra* (169 Va. at 281, 192 S. E. at 885).

"As stated by the learned trial judge, 'the purpose of zoning is in general two-fold: to preserve the existing character of an area by excluding prejudicial uses, and to provide for the development of the several areas in a manner consistent with the uses for which they are suited. The regulations should be related to the character of the district which they affect; and should be designed to serve the welfare of those who own and occupy land in those districts.' See also 1 Yokley, Zoning Law and Practice, § 10, pp. 12, 13."

*See also Boggs* v. *Board of Supervisors*, 211 Va. 488, 178 S. E. 2d 508 (1971), and *Fairfax County* v. *DeGroff*, 214 Va. 235, 198 S. E. 2d 600 (1973).

In *Fairfax County* v. *Snell Corp.*, 214 Va. 655, 659, 202 S. E. 2d 889, 893 (1974), we quoted from *Carper* and then said:

"Inherent in the presumption of legislative validity stated in *Carper* is a presumption of reasonableness. But, as *Carper*

makes plain, the presumption of reasonableness is not absolute. Where presumptive reasonableness is challenged by probative evidence of unreasonableness, the challenge must be met by some evidence of reasonableness. If evidence of reasonableness is sufficient to make the question fairly debatable, the ordinance 'must be sustained'. If not, the evidence of unreasonableness defeats the presumption of reasonableness and the ordinance cannot be sustained."

*See also Richmond* v. *Randall and Keith,* 215 Va. 506, 211 S.E.2d 56 (1975), this day decided.

Allman has overcome the presumption of legislative validity that attached to the action of the Board in reaffirming a RE-1 classification for his land. His evidence established a course of action by the Board that was inconsistent and discriminatory. A discriminatory action is an arbitrary and a capricious action, and bears no reasonable or substantial relation to the public health, safety, morals or general welfare. The reasonableness of the Board's action is not fairly debatable, and it will not be sustained.

■ We now consider the action of the lower court on November 15, 1973, in ordering that the Allman property be rezoned to the PDH-3 district. The position of the Board is that the trial court's order amended the zoning ordinance of Fairfax County and in this respect violates the doctrine of separation of powers. Its position is well taken.

The court's action is at odds with the decisions of this court and with the holdings of a majority of other jurisdictions. The ultimate classification of lands under zoning ordinances involves the exercise of the legislative power and under the doctrine of separation of powers this field shall not be invaded by the courts. The courts may not rezone property to specific categories upon a finding of the invalidity of a zoning ordinance. It is not the province of courts to zone or rezone, thereby substituting their judgment for that of the legislative body. This was our holding in *Boggs* v. *Board of Supervisors, supra,* where we said:

"Lastly, plaintiffs ask this court to rezone their land to permit the construction of a four-story office building and concomitant commercial facilities.

"Zoning is properly a legislative function. Under the evidence presented, this court will not substitute its judgment

for that of the Board in determining the proper rezoning classification for plaintiffs' land." 211 Va. at 492, 178 S. E. 2d at 511.

*See also Richmond* v. *Randall and Keith, supra,* and cases therein cited; *City of El Paso* v. *McArthur,* 473 S. W. 2d 322 (Tex. Civ. App. 1971); *Montgomery County* v. *Shiental,* 249 Md. 194, 238 A. 2d 912 (1968); *Prince George's County* v. *Farr,* 242 Md. 315, 218 A. 2d 923 (1966); *J. H. S. Homes, Inc.* v. *County of Broward,* 140 So. 2d 621 (Fla. App. 1962); *Herzog* v. *City of Pocatello,* 83 Idaho 365, 363 P. 2d 188 (1961); and *Gayland* v. *Salt Lake County,* 11 Utah 2d 307, 358 P. 2d 633 (1961).

Accordingly, the judgment of the trial court is affirmed in part and reversed in part. That part of the order entered July 23, 1973, the effect of which was to hold the RE-1 zoning classification void, as applied to the Allman property, is affirmed. The order of November 15, 1973, which rezoned the Allman property to the PDH-3 district is reversed. The cause is remanded. The court below will direct the Board to reconsider its action refusing to rezone the Allman property, and it will prescribe a reasonable time for the Board to act. During this period of time the court will suspend its adjudication of the invalidity of the classification RE-1. It having been established by the evidence that the uses of the property proposed by Allman are reasonable uses and that either zoning classification PDH-3 or zoning classification R-12.5 would permit such uses, the trial court will also enjoin the Board during the prescribed period from taking any action which would disallow these uses by Allman (appellees). The order of the trial court will further provide that should the Board fail to comply within the time specified, the adjudication of invalidity of zoning classification RE-1 for the property will become operative and the injunction will become permanent, provided that appellee landowners shall not put their property to any use other than those shown by the record to be reasonable.

*Affirmed in part; reversed in part; and remanded.*

Cochran, J., concurs in result.