Present: Carrico, C.J., Lacy, Hassell, Keenan, Koontz and Lemons, JJ., and Whiting, S.J.

BOARD OF SUPERVISORS OF FAIRFAX COUNTY, ET AL.

v.  Record No. 001484     OPINION BY JUSTICE DONALD W. LEMONS
                                          April 20, 2001
MCDONALD'S CORPORATION, ET AL.

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
M. Langhorne Keith, Judge

In this appeal, we consider the trial court's review of the decision of the Board of Supervisors of Fairfax County, ("Board") to deny Special Exception Application SE 96-H-032 ("SE application") filed by McDonald's Corporation, Bishop Properties, L.L.C., and Bishop Properties II, L.L.C. Specifically, we address the trial court's determination that the Board's action was invalid because the denial of the SE application was discriminatory.

I. Facts and Proceedings Below

McDonald's is the lessee of approximately 1.20 acres of property ("McDonald's" or "subject property") located at the intersection of Colts Neck Road and Glade Drive in Reston, a planned community in Fairfax County. Since December 31, 1995, McDonald's has been operating a fast food restaurant at this location.

On January 13, 1965, the Board approved a rezoning application, which rezoned approximately 141 acres in the Reston area of Fairfax County, to a Residential Planned

Community zoning district.[1]  The RPC zoning classification was subsequently replaced by the Planned Residential Community ("PRC") zoning district on August 14, 1978.  According to Fairfax County ("County") Zoning Ordinance[2] § 6-301, rezoning and development in a PRC "will be permitted only in accordance with a comprehensive plan and development plan" approved by the Board.

On July 22, 1970, the Board approved a development plan for the "Southern Sector [of] Reston," which was to include a village center, now known as Hunters Woods Village Center ("HWVC").  Under the terms of Zoning Ordinance § 6-302(C), a village center:

> [S]hould be a central location for activity of retail, community and leisure uses on a scale serving a number of neighborhoods.  A village center should be easily accessible to both vehicles and pedestrians.  Within such a center, the primary emphasis should be on the pedestrian circulation system.  A village center should contain uses such as professional offices, a supermarket, a hardware store, specialty shops and other [listed] uses.

HWVC currently includes Hunters Woods Village shopping center ("HWVSC"), an Exxon gas station, and McDonald's.

---

[1] Included in these 141 acres was the subject property, as well as land which now contains the Hunters Woods Village shopping center and the Hunters Square residential development.  The Hunters Woods Village shopping center consists of 15.28 acres, while the Hunters Square residential development contains 12.0 acres.

The subject property is triangular in shape and is physically separated from HWVSC and the Exxon station by Colts Neck Road, an undivided four-lane road that runs along the east side of McDonald's. Glade Road is a four-lane divided road that runs along the southern border of the subject property. McDonald's remaining border abuts the edge of Hunters Square townhouse community ("Hunters Square"). To the north of Hunters Square is the Hunters Crossing multi-family development ("Hunters Crossing").[3]

On September 17, 1974, a Non-Residential Use Permit ("Non-RUP") was granted for a fast food establishment, known as Jack In The Box, on the subject property. Subsequent Non-RUPs were granted on September 1, 1982, for a Popeye's fast food restaurant, and on January 2, 1996, for McDonald's.

Under the terms of the Zoning Ordinance in effect since August 1978, a fast food restaurant with drive-through facilities is permissible in a PRC zoning district if the restaurant is specifically displayed as a drive-through fast

---

[2] Fairfax County Zoning Ordinance will be referred to as "Zoning Ordinance."

[3] On March 1, 1976, the Board permitted residential townhouse development immediately adjacent to the subject property. This development is known as Hunters Square. On November 1, 1982, the Board approved a development plan amendment permitting 92 single-family attached or multi-family units to be built to the west of Colts Neck Road and north of the subject property. This development is known as Hunters Crossing.

food restaurant on a development plan approved by the Board. Additionally, if the development plan merely references commercial use in a designated village center, the drive-through facilities may be permitted upon obtaining a special exception or approval of an amended development plan.

On June 19, 1996, McDonald's filed a SE application with the Board, in which it proposed to add a drive-through facility to its restaurant on the subject property.[4] The proposed drive-through would add 75 square feet to the existing restaurant for a total of 2,515 square feet. An October 23, 1996 Staff Report prepared by County staff recommended approval of the SE application subject to proposed development conditions. Prior to a Planning Commission hearing on the application scheduled for November 6, 1996, McDonald's requested permission to defer the application to allow it "time to address the civic concerns that were raised and to work with additional citizens to obtain their support."

_____

[4] On the same date, McDonald's filed a corresponding variance application, VC 96-H-091, requesting permission for 22 parking spaces to remain 6.5 feet from the front property line adjacent to Ridgehampton Court. Current regulations require that these parking spaces be more than 10 feet from the property line. Zoning Ordinance § 11-102(8). Although these spaces are pre-existing and the SE application did not propose changing them, the County requires that an existing condition be brought into conformance with current regulations, or a variance obtained, when a special exception is approved. The Board of Zoning Appeals has deferred the

4

The request was granted and the application was reactivated in May 1997. Several modifications were made to the original SE application to address concerns that were raised in the October 23, 1996 Staff Report.[5] On October 22, 1997, the County staff issued another Staff Report recommending approval of the modified SE application, subject to proposed development conditions. On November 5, 1997, the Planning Commission voted unanimously to recommend to the Board that it deny the SE application.

The Board held a hearing on the application on December 8, 1997. After testimony from several witnesses, the Board voted unanimously to deny McDonald's SE application.

On the same day, the Board voted to approve DPA A-936-3, an application by Hunters Woods Village Center, L.L.C., the owner of HWVC, to amend the development plan approved by the Board in 1965. That application proposed demolition of the existing shopping center, excluding the gas station, and construction of a new, 123,000 square foot shopping center and 48 single-family attached residential units. Also, the

---

consideration of the variance application until resolution of the SE application.

    [5] These modifications included, "a second building addition to replace the proposed speaker post voice ordering system; a modification of the limits of clearing to reflect the deletion of retaining walls along the drive-thru aisle and; a reformulation of the landscape plan to include more tree-save on the site."

application requested three drive-through facilities, including one for a free-standing Burger King restaurant.

Other applications approved by the Board on December 8, 1997 included three special exceptions requested by Tall Oaks Village Center, L.L.C., the owner of the Tall Oaks Village shopping center ("TOVSC").[6] One of these applications, SE 97-H-049, requested approval of a drive-through fast food restaurant.

On June 1, 1999, McDonald's filed a Second Amended Bill of Complaint for Declaratory Judgment and Injunctive Relief against the Board.[7] McDonald's sought a declaration that the Board's denial of its SE application violated state law because such action was discriminatory and without a rational basis, a declaration that McDonald's has a right to construct and operate a drive-through window on the subject property, and an injunction preventing the Board and the County from interfering with its use of the subject property. Specifically, McDonald's alleged that the Board's denial was discriminatory because the Board approved drive-through fast food restaurants for HWVSC and TOVSC. McDonald's contended

---

[6] TOVSC is a Reston village shopping center located over two miles to the northeast of HWVC.

[7] McDonald's originally filed a Bill of Complaint on January 7, 1998. The Board filed a demurrer on February 13, 1998. After the trial court, on April 3, 1998, granted in

that "[t]here is no demonstrated real difference that distinguishes the [subject property] from the Hunters Woods and Tall Oaks approvals that justify preferring these sites to the [subject property]."

A bench trial was held on September 27-30, 1999 and October 14, 1999. Additionally, the trial court and counsel viewed the subject property on September 28, 1999. On January 27, 2000, the trial court issued an opinion letter, stating that the evidence clearly demonstrated that McDonald's was "subjected to [] different and irrational treatment" by the Board. The trial court stated that the Board's denial of the application "loses all credibility when the same factors cited by the Board [in denying the application] are waived or ignored in connection with the approval of the Tall Oaks and HWSC applications."

The trial court issued a Final Decree, incorporating its letter opinion, on March 15, 2000. In the Final Decree, the trial court declared invalid the Board's denial of McDonald's SE application and enjoined the Board from taking any action "that would disallow McDonald's right to construct and operate a drive-through window on the subject property consistent with

part the Board's demurrer, McDonald's filed the Second Amended Bill of Complaint.

7

McDonald's application," subject to imposition of reasonable development conditions.

On appeal, the Board contends that the trial court erred in ruling that the denial of McDonald's SE application was "discriminatory, arbitrary, and capricious." The Board maintains that the two shopping centers utilized by the trial court for comparison were not similarly situated to the McDonald's site and that the Board's decision was based upon "numerous rational bases." Further, the Board argues that the trial court erred in misapplication of the "fairly debatable standard." Finally, the Board alleges that the trial court erred in permitting McDonald's to amend its SE application during the trial and in finding that the SE application satisfied zoning ordinance requirements.

McDonald's assigns no cross-error and urges affirmance of the trial court's ruling.

## II. Standard of Review

When a governing body of any locality reserves unto itself the right to issue special exceptions, the grant or denial of such exceptions is a legislative function. Cole v. City Council of Waynesboro, 218 Va. 827, 837, 241 S.E.2d 765, 771 (1978). A legislative action "is presumed to be valid." City Council of Virginia Beach v. Harrell, 236 Va. 99, 101, 372 S.E.2d 139, 141 (1988). On appeal, we review the decision

of the trial court to reverse the Board's denial of McDonald's SE application with this principle in mind. As we have previously stated:

> [W]e accord the court's finding, as with the usual case, a presumption of correctness, but we also give full credit to the presumption of validity of the legislative action involved in the denial and then, assimilating the two presumptions, we examine the record to determine whether the evidence sustains the court's finding. In other words, the presumption of validity of legislative action does not disappear when a trial court finds that the action is unreasonable; the presumption accompanies the legislative action when the latter is brought to this court for review, and it is viable until this court holds with the trial court that the legislative action is unreasonable.

Board of Supervisors v. Lerner, 221 Va. 30, 34-35, 267 S.E.2d 100, 103 (1980)(internal citation omitted).

## III. Analysis

Despite multiple issues advanced by the Board on appeal, we need only focus upon the narrow issue identified by the trial court as the basis for its judgment. The trial court stated:

> The question presented here is not whether the Board's decision on the McDonald's drive-through standing alone is fairly debatable. Rather, the question is: When viewed with the Board's contemporaneous decisions granting the applications of HWSC and Tall Oaks, is the Board's denial of the McDonald's application unlawfully discriminatory? If so, has the Board demonstrated a rational basis for that discrimination?

9

The trial court found that "[t]he Tall Oaks and Hunters Woods Village Centers are similarly situated" to the McDonald's site and that the denial of McDonald's SE application was "inconsistent and discriminatory."

The presumption of legislative validity that attaches to the Board's decision is a presumption of reasonableness. When presumptive reasonableness "is challenged by probative evidence of unreasonableness, the challenge must be met by evidence of reasonableness." Board of Supervisors v. Jackson, 221 Va. 328, 333, 269 S.E.2d 381, 385 (1980). If the evidence of reasonableness is sufficient to make the question fairly debatable, the zoning action must be upheld upon judicial review. Id. If the evidence of reasonableness is insufficient, the presumption of reasonableness is overcome and the zoning action cannot be sustained. Board of Supervisors v. Snell Constr. Corp., 214 Va. 655, 659, 202 S.E.2d 889, 893 (1974). An issue is said to be fairly debatable "when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." Board of Supervisors v. Williams, 216 Va. 49, 58, 216 S.E.2d 33, 40 (1975).

Applying these general principles in Board of Supervisors v. Allman, 215 Va. 434, 211 S.E.2d 48 (1975), we recognized

10

that evidence bearing on the subject of reasonableness may include evidence of discriminatory treatment.  Holding that Allman had overcome the presumption of legislative validity, we noted that:

> His evidence established a course of action by the Board that was inconsistent and discriminatory.  A discriminatory action is an arbitrary and a capricious action, and bears no reasonable or substantial relation to the public health, safety, morals or general welfare.  The reasonableness of the Board's action is not fairly debatable, and it will not be sustained.

Id. at 445, 211 S.E.2d at 55.

Discrimination in zoning decisions is impermissible if it is unjustified.  Justification may be found "if there is a rational basis for the action alleged to be discriminatory." County Board of Arlington v. Bratic, 237 Va. 221, 229-30, 377 S.E.2d 368, 372 (1989).  See also County of Lancaster v. Cowardin, 239 Va. 522, 527, 391 S.E.2d 267, 269-70 (1990).  Thus, for the purpose of considering whether an issue is fairly debatable, a "rational basis" is synonymous with "reasonableness."  Clearly, impermissible discrimination in zoning actions is unreasonable, arbitrary, and capricious.  Consequently, a decision resulting in impermissible discrimination is not fairly debatable, and will not be sustained upon judicial review.

11

To sustain a claim of impermissible discrimination, the party contesting the zoning action must show that "a land use permitted to one landowner is restricted to another similarly situated." Board of Supervisors v. Rowe, 216 Va. 128, 140, 216 S.E.2d 199, 209 (1975). Thereafter, the governing body must show that "there is a rational basis for the action alleged to be discriminatory." Bratic, 237 Va. at 229-30, 377 S.E.2d at 372. That the properties in question are adjacent to one another is insufficient alone to establish a zoning discrimination claim. Helmick v. Town of Warrenton, 254 Va. 225, 231, 492 S.E.2d 113, 116 (1997).

Upon review of the extensive record in this case, we hold that the trial court erred in determining that HWVSC and TOVSC were similarly situated to the McDonald's site. The following are among the factors that distinguish the subject property from the comparison sites:

1. The subject property is a free-standing parcel of only 1.2 acres, whereas HWVSC is a shopping center with 15.28 acres and TOVSC is a shopping center with 7.46 acres.

2. The subject property is a single use site, whereas the shopping centers are multiple use sites.

3. In contrast to the subject property, fast food restaurants with drive-through facilities in the HWVSC site and TOVSC site are not directly accessed from public roads.

Service roads within the shopping centers serve to mitigate traffic congestion, whereas no such relief is possible at the subject property.

4. HWVSC has three separate locations of entrance and exit. TOVSC has two separate entrance and exit locations. By contrast, due to the size, configuration, and location of the subject property close to the intersection of Colts Neck Road and Glade Drive, the subject property has an entrance/exit on Colts Neck Road, but only an exit on Glade Drive. Because the shopping centers have more than one entrance, there are alternatives to potential traffic blockage or congestion at a particular entrance. Such alternatives are not available at the subject property.

5. The entrance to the subject property is only 265 feet from the intersection of Colts Neck Road and Glade Drive. The northern entrance to HWVSC, which is closest to the drive-through facility, is approximately 1200 feet from the intersection. At the TOVSC location, the entrance/exit locations are 670 feet and "about 940 feet" from the nearest intersection at North Shore Drive and Wiehle Avenue.

6. Estimated "vehicle trips" differ greatly between the sites. The subject property with a drive-through window was estimated to serve 539 vehicles per day per thousand square feet of gross floor area, whereas the estimate of "vehicle

13

trips" was 62 per day per thousand square feet of gross floor area at HWVSC.

7. Visual screening requirements for the sites differ significantly. The subject property is controlled by "Zoning Ordinance Screening Matrix Transition 3" which requires a 50-foot wide vegetated buffer. McDonald's SE application proposed to modify the buffer to 6.5 feet, a proposed reduction of 87 percent, along its northwestern border with the Hunters Square residential community. The application proposed to modify the buffer to 14.5 feet, a proposed reduction of 71 percent, along its southern border with the Machaans Cluster townhouse community across Glade Drive. By contrast, the drive-through facility at HWVSC is subject to a different screening matrix altogether ("Transitional Screening 2" requiring a 35-foot wide vegetated buffer) which had been subject to waiver of 32 percent. The TOVSC drive-through facility had no screening requirement applicable to it.

8. In contrast to the comparison sites, only the subject property required a variance to meet the Zoning Ordinance parking requirements. The McDonald's parking lot is just 6.5 feet from the Hunters Square residential property and 98 feet from the nearest residence. By contrast, the parking lot at the Burger King at HWVSC is 140 feet from the nearest residence in Hunters Crossing and is separated from the

14

residential community by a four-lane highway.  The parking facilities at TOVSC are 239 feet from the nearest residences.

Having determined that the trial court erred in finding HWVSC and TOVSC to be similarly situated to the McDonald's site, it is unnecessary to consider the Board's justification for treating the parcels differently.  Similarly, it is unnecessary to address any of the Board's remaining assignments of error.  Accordingly, we will reverse the judgment of the trial court and enter final judgment for the Board.

<u>Reversed and final judgment</u>.