## Richmond

BOARD OF COUNTY SUPERVISORS OF FAIRFAX COUNTY v. COURTLAND H. DAVIS, ET AL.

COURTLAND H. DAVIS, ET AL. v. BOARD OF COUNTY SUPERVISORS OF FAIRFAX COUNTY.

December 1, 1958.

Record Nos. 4837, 4838.

Present, All the Justices.

The opinion states the case.

*Hardee Chambliss, Jr.* (*Robert C. Fitzgerald*, on brief), for plaintiff in error, Board of County Supervisors of Fairfax County.

*Thomas Moncure* and *John Thorpe Richards* (*Andrew W. Clarke; John C. Wood*, on brief), for defendants in error, Courtland H. Davis, Et Al.

*Thomas Moncure* and *John Thorpe Richards* (*Andrew W. Clarke; John C. Wood*, on brief), for plaintiffs in error, Courtland H. Davis, Et Al.

*Hardee Chambliss, Jr.* (*Robert C. Fitzgerald*, on brief), for defendant in error, Board of County Supervisors of Fairfax County.

EGGLESTON, C. J., delivered the opinion of the court.

Courtland H. Davis and others, executors and trustees of the estate of W. F. P. Reid, Sr., deceased, and Albert L. Abramson, contract lessee, hereinafter referred to as the plaintiffs, filed in the court below a motion against the Board of County Supervisors of Fairfax County, hereinafter called the Board, praying for a declaratory judgment declaring invalid the action of the Board in denying the plaintiffs' application for a rezoning to general business of a

tract of 21.37 acres of land located at the northwest corner of U. S. Highway No. 1 and West Oak street in Fairfax county. After an ore tenus hearing and the consideration of certain documentary evidence, the lower court held that the refusal of the application bore no substantial relation to the public health, safety, morals, or welfare, and was arbitrary, unreasonable, capricious and illegal. It further adjudged that the zoning classifications applicable to this particular property prior to the filing of the present application were invalid.

From that judgment the Board has appealed claiming that the holding and judgment of the lower court in these respects were contrary to the law and evidence and without evidence to support them.

In a separate appeal the plaintiffs claim that the lower court erred in refusing to restrain the Board and its agents and employees from interfering with the plaintiffs' using the land in question for any of the uses included in the general business zoning classification.

The Reid estate owns a tract of land consisting of about 100 acres located on the west side of U. S. Highway No. 1, north of West Oak street. On this property there are now located among other minor buildings, a gasoline service station and an abandoned restaurant. A large portion of the property is used as an airport for light plane traffic and storage, with hangars, shops and other appurtenances as a nonconforming use under the zoning ordinance.

Prior to the application for rezoning with which we are concerned, 4.82 acres of the Reid property, beginning at the northwestern intersection of U. S. Highway No. 1 and West Oak street and extending northwardly along the highway for a distance of 975 feet with a depth of from 200 ot 235 feet, had been zoned for rural business. Just to the north of this strip are about 10 acres of land, fronting about 800 feet on the west side of the highway with a depth of about 400 feet, which had been zoned for general business. The rest of the Reid property had been zoned for suburban residence class III.

The property on the eastern side of the highway and opposite the Reid property is zoned for rural business. That on the south side of West Oak street, opposite and south of the Reid property, is zoned in part rural business and in part suburban residence class III. In this latter area and opposite that part of the Reid property which had been zoned for rural business is located the Groveton Elementary School with an enrollment of 442 pupils.

On March 16, 1956, the representatives of the Reid estate entered into a contract with Albert L. Abramson to lease to him and his assigns 25 acres of the Reid property, beginning at the northwestern intersection of U. S. Highway No. 1 and West Oak street and extending thence northwardly along the highway a distance of 1,350 feet with a depth of about 800 feet, for a period of 99 years, yielding to the estate for this term an income of approximately $3,800,000. The contract was contingent upon the lessee's securing a rezoning of so much of the 25 acres as were not already so zoned to the classification of general business, so as to permit the erection thereon of a shopping center. Included in this 25-acre parcel were the 4.82 acres zoned for rural business, 3.63 acres of the 10 acres zoned for general business, and 16.55 acres zoned for suburban residence.

On July 5, 1956, Abramson, the proposed lessee, filed with the proper authorities an application for a rezoning to the classification of general business of so much of the 25 acres as had not theretofore been so zoned; that is to say, he asked for a rezoning of the 4.82 acres classified as rural business and the 16.55 acres classified as suburban residence, or a total of 21.37 acres. After the application had been duly matured it was heard before the planning commission on December 3. At the conclusion of the hearing the commission, by a nine to two vote, favored granting the application.

On December 5 the Board of County Supervisors held a protracted hearing on the application, commencing at noon and extending until 2:00 a. m. the next day. At the conclusion of the hearing, by a six to one vote, the application was denied.

At the hearing on the motion for a declaratory judgment on the validity of the Board's action, by consent of counsel for both sides and in accordance with the usual practice obtaining in this jurisdiction, the lower court considered both the transcript of the hearing before the Board and the testimony of numerous witnesses heard in open court.

The transcript of the hearing before the Board contains the statements of numerous persons who appeared for and against granting the application. It was developed on behalf of the applicants that should the application be granted the lessee proposed to erect along the rear of the property twenty-two stores, consisting of a food store, a drugstore and other mercantile establishments, fronting toward the highway. Between these stores and the highway there were to be parking spaces for approximately 1,900 to 2,000 motor

vehicles. The proposed enterprise was described by the witnesses as a regional shopping center.

It was further developed before the Board that the establishment of the proposed enterprise would mean the discontinuance of the airport whose operations were considered by those in the vicinity as being hazardous both to the school and the near-by residences.

More than 1,200 residents of the area signed a petition favoring the granting of the application. Not a single resident appeared before the Board to oppose the application. The main opposition came from the developers of a proposed shopping center referred to as the Hybla Valley Shopping Center, located about 1.4 miles from this property. It was shown by or on behalf of the developers of the Hybla project that the Board had recently zoned for general business a tract of land upon which a similar but smaller shopping center was to be established. Those favoring the Hybla project took the view that the community could not support another large shopping center in the area and that the granting of the present application would seriously handicap, and might even prevent the completion of, the Hybla project. It was urged that the Board having "committed" itself by a previous zoning to the Hybla project ought not to jeopardize its success by granting the present application.

Incidentally, there was considerable discussion before the Board as to what effect the establishment of the Reid shopping center would have on the traffic conditions in the vicinity and whether it would be an added hazard to the near-by school. Some advocates of the application took the view that the abandonment of the airport would more than offset the hazard which might result from the operation of the shopping center. Near the end of the hearing before the Board the opponents raised the question that the establishment of the large parking area would present a serious drainage problem.

While these factors of traffic, hazard to the school and drainage were discussed before the Board, it is clear that the main theme was the probable effect upon the Hybla project of the granting of the present application and the establishment of this large shopping center. This appeared not only from the statements of the various proponents and opponents of the application, but also from the statements of the members of the Board who in turn, at the conclusion of the hearing, summarized their reasons for voting against granting the application. As Keith, one of the members of the Board,

expressed it: "I think that on the merits of the case the application ought to be granted," but that by its previous action the Board was "committed to a regional shopping center at Hybla Valley." Leigh, another member, expressed the view that "we are morally committed to back up the Banks and Lee development," that is, the Hybla project. Other members of the Board expressed the same view.

By way of compromise it was suggested that an application might be granted for a rezoning of a portion of the land to the desired classification in order that a smaller shopping center might be located thereon. Indeed, after the application had been rejected by a formal vote, the Board requested the planning commission to inquire into the feasibility of so classifying a portion of the area.

The hearing before the lower court followed the same general pattern as that before the Board. The representatives of the Hybla project actively opposed the motion for a declaratory judgment and as the record shows, employed counsel for that purpose. Each member of the Board testified and gave his reason for his vote at the previous hearing. It is true that some of these members testified that in denying the application they took into consideration the traffic, hazard to the school and drainage problems. But, again, it clearly appears from their testimony that these matters were only incidental and that the real reason they voted against granting the application was because of the adverse economic effect which the establishment of this proposed shopping center might have on the Hybla project. Again, some of the members took the view, as they had previously indicated, that a smaller portion of the Reid property might be rezoned for general business in order that a smaller shopping center might be located thereon.

Other witnesses gave testimony which related to whether on the merits the proposed change in zoning should or should not be made. This testimony related to the problems of traffic, hazard to the school and drainage, as well as the public need for the proposed shopping center on the Reid property. As was to be expected, the testimony on these phases of the matter was highly conflicting.

After considering the transcript of the hearing before the Board and the consideration of the oral evidence before it, the lower court in its written opinion found that while it was proper for the Board to have considered the problems of traffic, hazard to the school and drainage, these were not insurmountable and were not the real reason for the Board's refusal to grant the application. It found

that the real reason the Board denied the application "was to forestall·any competition to the business which might, or might not, some day be built at Hybla Valley." To hold the contrary, it said, "one must close his eyes to the obvious and ignore that which is plain, * * *. It is inconceivable, from the evidence, that this application would have been denied if this project did not threaten to compete with the project proposed to be built at Hybla."

We agree that the evidence before the lower court fully warranted this finding and conclusion.

■ The principles governing a judicial review of the validity of a zoning ordinance are well settled. In enacting and amending such an ordinance the local governing body acts in a legislative capacity (*Blankenship* v. *City of Richmond,* 188 Va. 97, 104, 49 S. E. 2d 321, 324) and has a wide discretion in the exercise of its police power. Its action is presumed to be valid and the burden is upon one seeking to overturn it to show that it is clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. If the question of reasonableness is fairly debatable, the court will not substitute its judgment for that of the legislative body charged with the primary duty and responsibility of deciding the matter. *West Bros. Brick Co.* v. *City of Alexandria,* 169 Va. 271, 288, 192 S. E. 881, 888 (appeal dismissed 302 U. S. 658, 58 S. Ct. 369, 82 L. ed. 508, rehearing denied 302 U.S. 781, 58 S. Ct. 480, 82 L. ed. 603).

In short, it is not the function of the reviewing court to constitute itself a zoning authority and substitute its views for those of the legislative branch of the local government.

■ Hence, we are not here concerned with whether the evidence before the lower court shows as an original matter that this application should have been granted. Our concern is whether the evidence supports the court's finding that the Board based its determination upon factors which the Board had no right to consider and which bore no substantial relation to the public health, safety, morals, or general welfare. We agree with the finding of the lower court with respect to the matter.

It is not a proper function of a zoning ordinance to restrict competition or to protect an enterprise which may have been encouraged by a prior zoning classification. See 58 Am. Jur., Zoning, § 211, p. 1055; *Benson* v. *Zoning Board of Appeals,* 129 Conn. 280, 27 A. 2d

389, 391, and cases there cited; *In re Appeal of Lieb,* 179 Pa. Sup. Ct. 318, 116 A. 2d 860, 865.

As Frederick H. Bair, Jr., a planning and economic development consultant who testified on behalf of the Reid estate, said: "The only point at which it is proper in zoning, in my opinion, to consider the economic effects is the point at which the economic effects reach into the general welfare. So far as holding one piece of ground for a shopping center and prohibiting other shopping centers which are needed simply because a prior commitment has been made or a prior piece of land has been zoned is not—it does not properly come under zoning as a function."

The Board contends that under well-settled principles its motives inducing its legislative action may not be thus assailed. See *Blankenship* v. *City of Richmond, supra,* 188 Va., at page 104, 49 S. E. 2d, at page 324, and authorities there cited.

It is not necessary that we decide whether that principle is applicable in the present case, because clearly the Board is in no position to invoke it here. The motion for judgment alleged that the decision and denial of the application by the Board "was based on the consideration of utterly improper factors, namely, possible economic detriment to others, and some feeling of an obligation to perpetuate a monopoly." This allegation was denied in the answer and evidence on the issue was admitted without objection. The objection for the first time on this appeal to the admissibility of such evidence and the consideration of these factors comes too late.

We agree with the holding of the lower court that the evidence shows that the denial by the Board of the rezoning application was based upon improper factors which bore no substantial relation to the public health, safety, morals, or welfare of the community, and was therefore arbitrary, unreasonable and invalid.

In its final order the lower court after adjudicating the invalidity of the action of the Board in denying the application for a rezoning of the 21.37-acre tract, went further and adjudicated that the zoning classifications applicable to this tract prior to the filing of the present application were invalid. We agree with the Board that this latter adjudication was improper. Neither in the pleadings nor in the proceedings in the lower court was any question raised as to the validity of the zoning classifications of the Reid property prior to the filing of this application. Nor was the subject mentioned in

the lower court's memorandum opinion. The only question before the court was whether the application for a rezoning should have been granted. Having decided that issue in favor of the applicants, there was no occasion to discuss the validity of the classifications prior to the filing of the application.

In their separate appeal the plaintiffs claim that after the court had held that their application for a rezoning should have been granted, it erred in denying their prayer that the Board, its officers, agents and employees be restrained from interfering with their use of the land in conformity with the uses included in the general business zoning classification.

It having been determined that the plaintiffs are entitled to the rezoning of their property in the desired manner, they are, of course, entitled to make such use of it as they may desire which conforms to the uses permitted in that classification. But in the absence of a showing that the Board was threatening to interfere with such use, the plaintiff's prayer for injunctive relief was premature and was properly denied by the lower court.

The judgment appealed from will be modified by eliminating therefrom the adjudication that the zoning classifications applicable to the 21.37-acre parcel of the Reid property prior to December 5 and 6, 1956, are invalid, and as so modified, it is affirmed. The appellees having substantially prevailed on this appeal will recover their costs.

*Modified and affirmed.*