PRESENT: All the Justices

EMAC, L.L.C.

OPINION BY
v. Record No. 150335                                        JUSTICE S. BERNARD GOODWYN
January 14, 2016
COUNTY OF HANOVER, ET AL.


FROM THE CIRCUIT COURT OF HANOVER COUNTY
J. Overton Harris, Judge

In this appeal, we consider whether the circuit court erred in granting a demurrer to a

claim alleging impermissible discrimination in the denial of a request for an extension of a

conditional use permit (CUP).

BACKGROUND

EMAC, L.L.C. (EMAC) filed an action for declaratory judgment, damages and attorney's

fees against the County of Hanover (the County) and the Board of Supervisors of the County of

Hanover (the Board). The action was an appeal and a challenge of the Board's decision to deny

EMAC's application for an extension of a CUP. The County and the Board (collectively

"defendants") filed a demurrer and motion to dismiss. The circuit court granted the defendants'

demurrer and motion to dismiss. EMAC appeals.

Northlake Park is the site of a new mixed use development in Hanover County.

Dominion Land and Development Corporation (Dominion Land) and/or Northlake Land

Investments, LLC (Northlake) own or owned many of the properties at Northlake Park.

According to EMAC, the two entities hold themselves out as being the developer of Northlake

Park. In 2013, Craig Realty Group (Craig Realty) expressed interest in developing an outlet

mall, designated as the "Outlets at Richmond," in Northlake Park. EMAC alleges in its amended

complaint that Craig Realty has convinced County officials and employees that Craig Realty's

proposed outlet mall will fulfill the County's goal of having a retail shopping center that generates millions of dollars of revenue for the County. EMAC claims upon information and belief that Dominion Land and Northlake agreed to assist Craig Realty in any way possible so that it could obtain the appropriate County approvals to facilitate development of the outlet mall.

To that end, in May 2012, Dominion Land and Northlake submitted a CUP application in anticipation of Craig Realty purchasing land from them to develop an outlet mall. The "Owner/Applicant" listed on the application was Dominion Land and Northlake. The CUP application was for two destination commerce signs to be located within the Northlake Park development, along Interstate 95 frontage with a minimum separation of 3,000 feet between signs. The signs would permanently state at their top "Outlets at Richmond" and below have an LED screen which could display advertisements on both sides. Describing why the proposed use was desirable and appropriate, the applicants stated, "[t]he requested conditional use for two destination commerce signs is desirable and appropriate for our development located within a destination commerce area as shown on the General Land Use Plan in Hanover County." They stated that the signs were "desired to attract outlet center tenants and other destination retailers to the development by providing highly visible site identification for I-95 traffic not familiar with the area."

One of the proposed signs, the northernmost sign (northern sign), was to be on land owned by Northlake. The other sign (southern sign) was to be on property owned by EMAC. Attached to the application was a non-binding letter of intent signed by the president of Craig Realty and the manager of EMAC that described the terms of a proposed sale from EMAC to Craig Realty of the land on which the southern sign was to be located.

2

On July 25, 2012, the Board approved CUP-2-12, which allowed the two signs to be constructed on the locations described in the maps attached to the application. The Board imposed several conditions that had to be satisfied before the signs could be built or used. CUP-2-12 required the signs to substantially conform to the appearance of the graphical renditions attached to the application. Moreover, the Board required that the site plan for either sign could not be approved until after the submission and approval of a master sketch plan showing all parcels and the total acreage included in the development. Additionally, construction of the signs could not begin until building permits were issued for the outlet mall, and the signs could not be used to advertise the outlet mall until after the approval of the first framing inspection of the outlet mall. CUP-2-12 stated that it would expire after one year if no substantial construction or change of use had taken place consistent with what CUP-2-12 was approved to accomplish.

On June 4, 2013, Dominion Land requested a one-year extension of CUP-2-12 to prevent the CUP from lapsing before Craig Realty could acquire the building permits for the outlet mall. The Board approved an extension for one year for both signs on July 24, 2013.

While Northlake owned and continues to own the site for the proposed northern sign, EMAC, the owner of McGeorge Rolling Hills RV, a recreational vehicle dealer, was and remains the owner of the site of the proposed southern sign. EMAC and Craig Realty have been unable to agree upon the sale of that property to Craig Realty.

On February 27, 2014, EMAC asked the Board for another extension of CUP-2-12 for the southern sign. On May 8, 2014, Northlake requested an extension of CUP-2-12 for the northern sign. No construction or change of use, consistent with what CUP 2-12 was approved to accomplish, had taken place as of May 2014.

On May 5, 2014, Craig Realty filed a request for a new CUP, CUP-4-14, to relocate the proposed southern sign to the same parcel of property as the outlet mall. The cover letter to the application for CUP-4-14 stated that Northlake had agreed to enter "a perpetual easement agreement" with Craig Realty to give Craig Realty "access, construction, and ongoing maintenance" of the northern sign under CUP-2-12, but that Craig Realty had been unable to purchase the land for the southern sign from EMAC. It said that the application for CUP-4-14 was submitted to allow for building of a southern sign in a different location. The application for CUP-4-14 stated, "[t]he requested relocation of one of the signs will allow the Outlet Center management unfettered access to the sign for its continuous operation, maintenance and use by the OC tenants and business w/in Northlake's Dest. Comm." It added that CUP-4-14 would "allow[ ] management to run tenant's ever changing advertising programs and OC promotions to drive the success of the center."

After the Board approved Northlake's request to extend CUP-2-12 for the northern sign but denied EMAC's request to extend CUP-2-12 for the southern sign, EMAC filed a complaint and later an amended complaint in the Circuit Court of Hanover County against the defendants. EMAC alleged that the Board's refusal to grant EMAC's request for an extension of CUP-2-12 for the southern sign was arbitrary and capricious. It argued that the County had discriminated against it in favor of Northlake, a similarly situated landowner, and that its "decision was not related to the public health, safety, morals, or general welfare." EMAC acknowledged that, unlike Northlake, it did not have an agreement with the outlet mall developer, Craig Realty, for Craig Realty to operate the sign on its property, but it argued that having such an agreement was not a condition of CUP-2-12 or Hanover County's sign ordinance. It asserted that the outlet mall signs were "highly profitable and can generate in excess of four hundred thousand dollars per

4

year." EMAC requested damages of $6,900,000 plus attorney fees, expert witness fees and costs.

EMAC attached several exhibits to its amended complaint that had been made exhibits to the original complaint by a consent order in which the parties agreed to grant a motion craving oyer filed by defendants. The exhibits included CUP-2-12; the application for CUP-2-12 with accompanying documents showing the proposed locations and renditions of the proposed signs; the June 4, 2013 application for an extension of CUP-2-12; and the application and cover letter for CUP-4-14.

Defendants filed a demurrer and motion to dismiss the amended complaint.[1] They argued that the facts alleged in the amended complaint and the information contained in the exhibits showed that the Board's decision to deny EMAC an extension for the southern sign was not arbitrary and capricious and was at least fairly debatable. The defendants asserted that only Northlake and Craig Realty working together could comply with the conditions of CUP-2-12. Defendants claimed that the Board originally approved CUP-2-12 with the intention that the signs would promote the development of Northlake Park and that the outlet mall developer would control the signs.

The circuit court sustained the demurrer and motion to dismiss and issued a letter opinion. Upon consideration of the allegations in the amended complaint and the documents made exhibits pursuant to the joint consent order on defendants' motion craving oyer, the circuit court ruled that EMAC was required to prove that the existing zoning ordinance was unreasonable as applied to its property, and that it failed to allege any facts to satisfy this requirement. It noted that the continued success of the recreational vehicle dealership on

[1] The County previously filed a demurrer and motion to dismiss the original complaint.

5

EMAC's property showed that the current zoning ordinance was reasonable. Further, the circuit court held that even if EMAC had properly alleged that the current zoning was unreasonable, the record was sufficient to show that the Board's decision denying EMAC's extension request was supported by a rational basis and was fairly debatable. The circuit court ruled that EMAC's compliance with CUP-2-12's conditions was not feasible, and that the conditions necessary for the signs to be constructed would best be satisfied by Northlake and Craig Realty working together. Further, the court noted that EMAC and Craig Realty had developed an adverse relationship that made collaboration between the two unlikely. Finally, the court found that the Board intended for the outlet mall developer to control both signs when it issued CUP-2-12, and that there were potential benefits to Hanover County of having the outlet mall developer control the signs. The court dismissed EMAC's complaint with prejudice.

## ANALYSIS

EMAC argues that the circuit court erred when it sustained the demurrer and motion to dismiss based upon the grounds that EMAC did not allege that the existing zoning ordinance was unreasonable without a CUP permitting a destination commerce sign on its property. It also claims that the circuit court erred by applying the fairly debatable standard in a zoning discrimination case. Moreover, it also contends that even if the court rightfully applied the fairly debatable standard, it did not properly interpret the allegations in the amended complaint and the exhibits attached to it, and there were insufficient grounds in the amended complaint and exhibits to establish that the Board's decision was fairly debatable.

We review whether the circuit court properly granted defendants' demurrer de novo. Squire v. Virginia Hous. Dev. Auth., 287 Va. 507, 514, 758 S.E.2d 55, 59 (2014). When ruling

6

on a demurrer, a trial court accepts all facts properly pled and any reasonable inferences from those facts as true and decides whether the allegations present a valid cause of action. Id.

We have held that documents brought into a case as a result of a motion craving oyer are incorporated into the pleadings and may be used to "amplif[y]" the facts alleged in a complaint when a court decides whether to sustain or overrule a demurrer. Dodge v. Trustees of Randolph-Macon Woman's College, 276 Va. 1, 5, 661 S.E.2d 801, 803 (2008); Ward's Equip. v. New Holland N. Am., 254 Va. 379, 382, 493 S.E.2d 516, 518 (1997); Jarrett v. Jarrett, 34 Va. (7 Leigh) 93, 97 (1836); Wood v. Commonwealth, 25 Va. (4 Rand.) 329, 330 (1826); see also Kent Sinclair & Leigh B. Middleditch, Jr., Virginia Civil Procedure § 9.6, at 739-40 (6th ed. 2014). Furthermore, "a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." Schaecher v. Bouffault, 290 Va. 83, 107, 772 S.E.2d 589, 602 (2015); Ward's Equip., 254 Va. at 382-83, 493 S.E.2d at 518.

Here, the parties entered a consent order granting oyer and the circuit court properly considered the documents that were added as exhibits pursuant to the grant of oyer.[2] Thus, in ruling upon defendants' demurrer and motion to dismiss, the court was able to consider not only the allegations in the amended complaint, but also the application for CUP-2-12 with accompanying maps showing the proposed locations for the signs and renditions of the proposed signs, the letter acknowledging the Board's approval of CUP 2-12 and providing the conditions

---

[2] The exhibits were added to the record as a result of a motion craving oyer regarding the original complaint. When EMAC was granted leave to file an amended complaint adding two additional counts to the complaint, the exhibits were attached to the amended complaint and considered by the circuit court without objection as having been added and incorporated into the amended complaint as the result of the consent order granting oyer.

of that approval, the June 4, 2013 application for an extension of CUP-2-12 and the application and cover letter for CUP-4-14.

The decision of a locality on a CUP is presumed valid and will not be altered by a court absent "clear proof that the action is unreasonable, arbitrary, and bears no reasonable relation to the public health, safety, morals, or general welfare." City Council of Virginia Beach v. Harrell, 236 Va. 99, 101-02, 372 S.E.2d 139, 141 (1988); City of Richmond v. Randall, 215 Va. 506, 511, 211 S.E.2d 56, 60 (1975) (noting that the standards of judicial review for zoning enactments also apply to decisions on an application for a CUP). If a challenging party presents probative evidence of unreasonableness, the locality must present sufficient evidence to show that the reasonableness of the decision is "fairly debatable" in order to have the locality's decision upheld in court. Harrell, 236 Va. at 102, 372 S.E.2d at 141 (citation and internal quotation marks omitted). "An issue is said to be fairly debatable when the evidence offered in support of the opposing views would lead objective and reasonable persons to reach different conclusions." Board of Supervisors v. McDonald's Corp., 261 Va. 583, 590, 544 S.E.2d 334, 339 (2001) (citation and internal quotation marks omitted).

Relying on our decisions in Harrell, 236 Va. at 102, 372 S.E.2d at 141, and Board of Supervisors v. International Funeral Services, Inc., 221 Va. 840, 275 S.E.2d 586 (1981), the circuit court held that a landowner challenging the denial of a CUP must prove that the denial was unreasonable by showing not only that the requested use is reasonable, but also that the existing zoning ordinance is unreasonable as applied to his, her or its land. The circuit court thus found that because EMAC did not allege that the existing ordinance was unreasonable as to its property, it did not make a valid claim. EMAC argues that the circuit court erred in applying that standard in this instance, because EMAC alleges impermissible discrimination as the basis for

8

the Board's decision not to grant EMAC's request to extend the CUP. We agree with EMAC concerning this assignment of error.

EMAC's amended complaint alleged that the Board discriminated against it by rejecting its application for an extension of CUP-2-12 for the southern sign while granting Northlake's extension request of CUP-2-12 for the northern sign. An impermissibly discriminatory decision is unreasonable regardless of whether the existing zoning ordinance is reasonable as applied to an applicant's land. McDonald's, 261 Va. at 591, 544 S.E.2d at 339. In order to allege a valid claim for impermissible discrimination, the contesting party must show that the requested use granted to one landowner was rejected as to "another similarly situated." Id. (citation and internal quotation marks omitted). If a landowner makes such a showing, the locality has the burden to prove that there was a rational basis justifying the allegedly discriminatory action, thereby establishing that the decision was fairly debatable. Id. Thus, if a landowner alleges that a zoning decision impermissibly discriminated against it, it has implicitly alleged that the decision was unreasonable. Therefore, the court erred in finding that EMAC was required to allege that the existing zoning ordinance was unreasonable as applied to its land in order to state a cause of action, and in granting defendants' demurrer and motion to dismiss on that basis.

However, as an alternative basis for its decision to grant defendants' demurrer, the circuit court stated that the amended complaint and exhibits demonstrated that the decision to deny EMAC's extension request was supported by a rational basis and was fairly debatable. EMAC claims that the circuit court erred in sustaining the demurrer on this ground as well. EMAC's amended complaint states that the Board's decision to deny the extension of CUP-2-12 for the southern sign was arbitrary and capricious and was impermissibly discriminatory because EMAC and Northlake were similarly situated but treated differently. However, an examination

9

of the amended complaint and its exhibits, read in the light most favorable to the plaintiff, shows that Northlake and EMAC are not similarly situated parties, and that the circuit court did not err in concluding that the County's decision concerning the extension of the CUP was fairly debatable and supported by a rational basis.

The record before the circuit court on demurrer included EMAC's lengthy amended complaint and exhibits, including the exhibits that were the subject of the joint consent order on defendants' motion craving oyer, which included materials that the Board considered when it denied EMAC's extension application. The circuit court properly relied upon this extensive record to conclude that the Board's decision was fairly debatable, and that EMAC had failed to allege facts upon which it could prevail in its challenge of the Board's zoning decision. It was, therefore, proper for the circuit court to sustain the defendants' demurrer and motion to dismiss.

First, EMAC and Northlake are not similarly situated because Northlake was an applicant for CUP-2-12 and EMAC was not. Hanover County Code § 26-322(a) states that an application for a CUP "may be made by any property owner, attorney-in-fact of the owner, or tenant." Moreover, Hanover County Code § 26-322(b) states, "An application for a conditional use permit shall include written permission from the owner of the subject property granting right of entry to the zoning administrator and to agents of the County and law enforcement agencies, for inspection purposes, during the term of any permit which may be issued." While Northlake, the owner of the land designated for the northern sign, was listed as an applicant on the application for CUP-2-12 and it gave County representatives permission to enter its land to inspect upon request, neither EMAC, the owner of the land designated for the southern sign at the time of the application for CUP-2-12, nor its attorney-in-fact or tenant was an applicant, and EMAC gave no such permission. Therefore, while CUP-2-12 was valid as to the northern sign, it was void ab

10

initio as to the southern sign.[3] Concerned Taxpayers v. County of Brunswick, 249 Va. 320, 325, 455 S.E.2d 712, 714-15 (1995) (holding that the circuit court erred by granting a demurrer on a third party challenge to a CUP when the third party alleged that the locality wrongfully granted a CUP to a party that did not own or have a contract to buy the land subject to the CUP in violation of the local zoning ordinance); Hurt v. Caldwell, 222 Va. 91, 97-98, 279 S.E.2d 138, 142 (1981) (holding that a building permit issued that did not comply with the requirements of a local ordinance "was void and of no effect"). Thus, the parties were not similarly situated because Northlake was seeking an extension for a valid portion of CUP-2-12 while EMAC was seeking an extension for a void ab initio portion of CUP-2-12. The reasonableness of the Board's decision not to grant EMAC an extension is fairly debatable, and as a result, the circuit court did not err in granting the defendants' demurrer and motion to dismiss.

Further, the application and grant of CUP-2-12 was at all times subject to the provisions of Hanover County Code § 26-327 governing the duration of CUPs, which state that such

---

[3] When part of a legislative enactment is void ab initio but the other part is not, the valid portions of the enactment are usually preserved and the entire enactment is not rendered void, in accord with Code § 1-243 ("The provisions of acts of the General Assembly or the application thereof to any person or circumstances that are held invalid shall not affect the validity of other acts, provisions, or applications that can be given effect without the invalid provisions or applications. The provisions of all acts, except for the title of the act, are severable unless (i) the act specifically provides that its provisions are not severable; or (ii) it is apparent that two or more acts or provisions must operate in accord with one another."); Hanover County Code § 1-4 ("If any part, section, subsection, sentence, clause or phrase of this Code is, for any reason, declared to be unconstitutional or invalid, such decision shall not affect the validity of the remaining portions of this Code."); Toghill v. Commonwealth, 289 Va. 220, 227-28, 232-35, 768 S.E.2d 674, 678, 680-82 (2015) (discussing and applying the Court's preference for invalidating only unconstitutional applications of a statute instead of facially invalidating the statute).

Given that CUP-2-12 allows for two discrete signs and that the Board's goal with CUP-2-12 was to allow for signage for the proposed outlet mall, it is our judgment that the Board would have preferred having one sign be valid instead of having both signs be rendered invalid. Thus, the portion of CUP-2-12 allowing for the northern sign is not void ab initio even though CUP-2-12 was void ab initio regarding the southern sign.

11

permits are void one year after the date of approval "unless substantial construction or use" has been initiated. The Board declined to grant EMAC additional time. Hanover County Code § 26-327(b)(3) states that an extension of a CUP is only allowed if "approval of additional time is consistent with the public interest." EMAC complains that it was not given an extension while Northlake was. However, Northlake and EMAC were not similarly situated with regard to whether granting them additional time was consistent with the public interest.

In its amended complaint, EMAC asserts that the County is convinced that the proposed Outlets at Richmond will fulfill the County's goal of having an outlet mall that generates millions of dollars of revenue for the County. It also agrees that Northlake, the developer of Northlake Park, applied for CUP-2-12 to assist Craig Realty, the developer of the outlet mall that was to be located within the park. The CUP allows for the construction of two destination commerce signs that will advertise the outlet mall. The CUP application contemplated that EMAC would sell the location for the southern sign to the outlet mall developer. The County imposed conditions regarding the development of the outlet mall as a prerequisite to constructing the signs. Pursuant to the terms of the CUP, an outlet mall must be developed prior to the signs being allowed.

Northlake has an agreement with the outlet mall developer concerning the operation of the northern sign on its property, and there is no controversy concerning whether extension of that CUP is consistent with the public interest of developing the outlet mall and constructing the sign. However, there is no such agreement between EMAC and Craig Realty for the southern sign. Moreover, as noted by the circuit court, allegations in the amended complaint evidence an adverse relationship between EMAC and the outlet mall developer. Additionally, the outlet mall developer has requested that the southern sign, required by the CUP to advertise the outlet mall,

12

be moved to a different location controlled by it. EMAC provides no argument as to why granting it an extension would be consistent with the public interest. EMAC is unaffiliated with the development of the outlet mall, which is a prerequisite for the signs to be constructed. Thus, it is reasonably debatable as to whether it would be consistent with the public interest to give EMAC additional time to fulfill the requirements of the CUP.

It was rational, fairly debatable and consistent with the public interest to allow the CUP for the sign on EMAC's property to lapse so that the Board can evaluate the appropriate placement of the southern sign consistent with the public interest.

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court, and hold that it did not err in granting defendants' demurrer and motion to dismiss.

<u>Affirmed.</u>

JUSTICE POWELL, dissenting.

In my opinion, the trial court erred in granting the demurrer in the present case. By alleging that the County relied on improper factors in its decision to deny EMAC an extension of CUP-2-12, EMAC has sufficiently shown that the County's actions were arbitrary and unreasonable. Therefore, I believe that the trial court erred in granting the demurrer in the present case. Furthermore, as the majority has correctly recognized, the trial court applied the incorrect test. Although I agree with the majority as to what the proper test is in this case, I disagree with the majority's determination that EMAC and Northlake are not similarly situated landowners. Accordingly, I must respectfully dissent.

13

As an initial matter, I believe it is important to note the proper role of the courts in reviewing a decision made by a zoning authority. We have explained that, because the decision of a zoning authority is legislative in nature, a reviewing court should not be concerned with whether the decision was right or wrong. Board of County Supervisors v. Davis, 200 Va. 316, 322, 106 S.E.2d 152, 157 (1958). Rather, the reviewing court should only concern itself with whether there is evidence that the zoning authority "based its determination upon factors which the [zoning authority] had no right to consider and which bore no substantial relation to the public health, safety, morals, or general welfare." Id. Where the evidence demonstrates that the decision of the zoning authority was made based on consideration of improper factors, the decision of the zoning authority is arbitrary and unreasonable. Id. Further, it is well-established that "[a] demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Thus, to survive demurrer in the present case, EMAC need only allege that the County considered improper factors in denying its extension of CUP-2-12. Notably, EMAC specifically alleged that the County denied the extension to guarantee that Craig Realty, and not EMAC, enjoyed the profits generated by the sign, and to eliminate competition between the two signs by granting Craig Realty a monopoly over the signs. None of these reasons bear any relation to public health, safety, morals, or general welfare and, therefore, are improper factors. See Davis, 200 Va. at 323, 106 S.E.2d at 157 (recognizing that improper factors include consideration of economic detriment to others, the desire to restrict competition, or the desire to perpetuate a monopoly). As nothing in the record contradicts these allegations, I believe that EMAC's complaint sufficiently alleged that the County's decision was arbitrary and unreasonable; therefore, the trial court erred in granting the demurrer.

14

Moreover, we have recognized that, where a party alleges facts that, if true, would demonstrate that a zoning authority's actions are unreasonable, that party is "entitled to present . . . evidence to challenge the presumptive reasonableness of the legislative action." Concerned Taxpayers v. County of Brunswick, 249 Va. 320, 328, 455 S.E.2d 712, 716 (1995). Further, we have stated that no determination can be made as to whether the zoning authority's decision was fairly debatable until the court has heard the evidence. Id. As EMAC was denied the opportunity to present evidence we have stated it was entitled to present, I believe that the majority's finding that the County's actions were fairly debatable is premature. Accordingly, I would remand the matter to the trial court to afford EMAC the opportunity to present the evidence we have stated it is entitled to present.

I further take issue with the majority's determination that EMAC and Northlake were similarly situated. Our jurisprudence has clearly established that "[t]o sustain a claim of impermissible discrimination, the party contesting the zoning action must show that 'a land use permitted to one landowner is restricted to another similarly situated.'" Board of Supervisors v. McDonald's Corp., 261 Va. 583, 591, 544 S.E.2d 334, 339 (2001) (quoting Board of Supervisors v. Rowe, 216 Va. 128, 140, 216 S.E.2d 199, 209 (1975)). However, as McDonald's clearly establishes, in determining whether the landowners are "similarly situated," the focus of our analysis should be on the properties at issue, not on the landowners. Id. at 591, 216 S.E.2d at 339. In determining that the landowners in McDonald's were not similarly situated, this Court enumerated eight "factors that distinguish the subject property from the comparison sites." Id. Notably, each of these enumerated factors references the "subject property" and how it is different from one or both of the comparison sites; none of the enumerated factors refer to any differences between the landowners. Id. at 591-92, 216 S.E.2d 339-40. Indeed, it is particularly

15

telling that <u>McDonald's</u> contains virtually no discussion about any of the landowners beyond the fact that they own the properties at issue.

As previously noted, this Court has recognized that a zoning authority may not consider or base its actions on improper factors (i.e., factors that bear "no substantial relation to the public health, safety, morals, or general welfare.") <u>Davis</u>, 200 Va. at 322, 106 S.E.2d at 157. Only the nature of the property and the manner in which it is used relate to public health, safety, morals, or general welfare; the identity of the landowner bears no such relation. Indeed, we have implicitly recognized that a zoning authority's consideration of the identity of a landowner is improper, as such consideration serves only "to restrict competition or to protect an enterprise which may have been encouraged by a prior zoning classification." <u>Id.</u>; <u>see also</u> <u>Benson v. Zoning Board of Appeals</u>, 27 A.2d 389, 391 (Conn. 1942) ("[T]he zoning authority has no right to regard the prevention of competition as a factor in administering the zoning law."). Given that zoning laws deal with the manner in which property is used and not who is using the property, it is only logical that, in determining whether landowners are "similarly situated" our focus must necessarily be on a comparison of the properties and not the landowners.

In the present case, neither party has identified any difference in the properties, other than the ownership. It is particularly telling that CUP-2-12 was initially approved with regard to both proposed locations for the signs, indicating that the County agrees that the properties were substantially similar (i.e., both were suitable locations for the signs). It is also worth noting that both properties are located in an area that the County has designated as a Destination Commerce area known as Northlake Park (also referred to as Northlake Subdivision or Northlake Development). Similarly, both properties offer high visibility from the interstate, making them ideal locations for a destination commerce sign. Thus, in my opinion, it is unequivocal that, at

16

least with regard to the portion of the properties where the signs were to be located, both EMAC and Northlake are similarly situated landowners.

Even assuming it is proper to compare landowners, I disagree with the majority's determination that these landowners are not similarly situated. According to the majority, EMAC and Northlake are not similarly situated landowners because CUP-2-12 is only valid with regard to Northlake and void ab initio with regard to EMAC. The majority further asserts that "Northlake and EMAC were not similarly situated with regard to whether granting them [an extension of the CUP] was consistent with the public interest." As I have previously indicated, I believe these findings are premature, as EMAC is entitled to present its evidence before such a determination is made. Additionally, in my opinion, these findings are not supported by the record.

In its complaint, EMAC alleged that the application for CUP-2-12 was "fully consistent with the Comprehensive Plan, in the public interest, and complied with all other requirements." (Emphasis added.) Further, the CUP application form identifies both Northlake's property and EMAC's property as the subjects of the application. Moreover, the CUP application form expressly allows the "owner or authorized agent of the property" to certify that the application is complete and grant County representatives entry on the property. (Emphasis added.) Thus, it may be fairly inferred that, with regard to the application for CUP-2-12, Northlake and Dominion Land were acting as EMAC's authorized agents. Taking this fact as true, EMAC has met the requirements of Hanover County Code § 26-322 and, at least at this point in the proceedings, it cannot be said that CUP-2-12 is void ab initio with regard to EMAC.[1]

---

[1] It is further worth noting that any implication that Northlake could not act as EMAC's authorized agent in applying for CUP-2-12 is unavailing. If such an argument were correct, then, under the majority's logic, Northlake's 2014 extension of CUP-2-12 is also void ab initio.

17

With regard to the majority's finding that granting EMAC an extension of the CUP was not in the public interest, the majority appears to rely on the assumption that the signs at issue in the present case are only for the benefit of Craig Realty and the outlet mall and, therefore, an agreement between EMAC and Craig Realty was a prerequisite for the construction of the signs. Under Hanover County Code § 26-277(e)(4), however, the signs at issue are "for the identification of businesses within the area designated for Destination Commerce." As previously noted, the area designated for Destination Commerce in the present case is Northlake Park, which includes several businesses, including McGeorge Rolling Hills RV,[2] a Harley-Davidson Distribution Center, and, eventually, those located in the outlet mall. Therefore, Hanover County Code § 26-277(e)(4) dictates that the sign is for the benefit of <u>all</u> of those businesses. Even Northlake has recognized this fact, as page 10 of the application for CUP-2-12 expressly states that the signs will promote not only the outlet mall, but the other tenants of the Northlake Park as well. Accordingly, in determining whether the extension of the CUP was in the public's interest, the focus should be on whether a sign on EMAC's property would meet the requirements of Hanover County Code § 26-277(e)(4). Given that there is no evidence one way

_____

Notably, the record unequivocally establishes that, in 2013, only Dominion Land applied for the extension of CUP-2-12. The record clearly establishes that Dominion Land and Northlake are entirely separate companies and that Northlake is the sole owner of the site for the proposed northern sign. Thus, unless Dominion Land was acting as Northlake's authorized agent, Northlake failed to request an extension for CUP-2-12 before it expired, as is required by Hanover County Code § 26-327(b)(1)(a). As CUP-2-12 expired as to Northlake in 2013, Northlake could not have been granted an extension for CUP-2-12 in 2014. Therefore, if CUP-2-12 is void ab initio as to EMAC, then Northlake's 2013 extension of CUP-2-12 is also void ab initio. If, on the other hand, Northlake's 2013 extension of CUP-2-12 is valid, then CUP-2-12 is also valid as to EMAC.

[2] Notably, McGeorge Rolling Hills RV is located entirely on EMAC's property.

18

or the other on this matter, I do not believe that a decision can be made at this point as to whether the extension of CUP-2-12 is in the public interest.[3]

For the foregoing reasons, I cannot join in the decision of the majority. In my opinion, the pleadings, even when the attached documents are considered, sufficiently allege that the properties at issue in the present case are substantially similar and the County's decision to favor one landowner over the other was discriminatory. Accordingly, I would reverse the decision of the trial court and remand the matter for further proceedings.

---

[3] The majority also appears to rely on Craig Realty's decision to move the sign to a less ideal location as demonstrating that the extension of CUP-2-12 is not in the public interest. However, assuming that the public interest implicated by these signs is related to the tax dollars generated by the retailers in Northlake Park, as Hanover County Code § 26-277(e)(4) indicates, it cannot be said that such a move is in the public interest. The record demonstrates that the new location has less visibility. Less visibility means less traffic and less traffic results in fewer tax dollars being generated. Thus, the record demonstrates that such a move is actually not in the public interest. Indeed, it would appear from the record that the only entity that benefits from such a move is Craig Realty.