Justice POWELL, dissenting.
In my opinion, the trial court erred in granting the demurrer in the present case. By alleging that the County relied on improper factors in its decision to deny EMAC an extension of CUP-2-12, EMAC has sufficiently shown that the County's actions were arbitrary and unreasonable. Therefore, I believe that the trial court erred in granting the demurrer in the present case. Furthermore, as the majority has correctly recognized, the trial court applied the incorrect test. Although I agree with the majority as to what the proper test is in this case, I disagree with the majority's determination that EMAC and Northlake are not similarly situated landowners. Accordingly, I must respectfully dissent.
As an initial matter, I believe it is important to note the proper role of the courts in reviewing a decision made by a zoning authority. We have explained that, because the decision of a zoning authority is legislative in nature, a reviewing court should not be concerned with whether the decision was right or wrong. Board of County Supervisors v. Davis, 200 Va. 316, 322, 106 S.E.2d 152, 157 (1958). Rather, the reviewing court should only concern itself **27 with whether there is evidence that the zoning authority "based its determination upon factors which the [zoning authority] had no right to consider and which bore no substantial relation to the public health, safety, morals, or general welfare." Id. Where the evidence demonstrates that the decision of the zoning authority was made based on consideration of improper factors, the decision of the zoning authority is arbitrary and unreasonable. Id. Further, it is well-established that "[a] demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." Glazebrook v. Board of Supervisors, 266 Va. 550, 554, 587 S.E.2d 589, 591 (2003). Thus, to survive demurrer in the present case, EMAC need only allege that the County considered improper factors in denying its extension of CUP-2-12. Notably, EMAC specifically alleged that the County denied the extension to guarantee that Craig Realty, and not EMAC, enjoyed the profits generated by the sign, and to eliminate competition between the two signs by granting Craig Realty a monopoly over the signs. None of these reasons bear any relation to public health, safety, morals, or general welfare and, therefore, are improper factors. See Davis, 200 Va. at 323, 106 S.E.2d at 157 (recognizing that improper factors include consideration of economic detriment to others, the desire to restrict competition, or the desire to perpetuate a monopoly). As nothing in the record contradicts these allegations, I believe that EMAC's complaint sufficiently alleged that the County's decision was arbitrary and unreasonable; therefore, the trial court erred in granting the demurrer.
Moreover, we have recognized that, where a party alleges facts that, if true, would demonstrate that a zoning authority's actions are unreasonable, that party is "entitled to present ... evidence to challenge the presumptive reasonableness of the legislative action." Concerned Taxpayers v. County of Brunswick, 249 Va. 320, 328, 455 S.E.2d 712, 716 (1995). Further, we have stated that no determination can be made as to whether the zoning authority's decision was fairly debatable until the court has heard the evidence. Id. As EMAC was denied the opportunity to present evidence we have stated it was entitled to present, I believe that the majority's finding that the County's actions were fairly debatable is premature.
**28 Accordingly, I would remand the matter to the trial court to afford EMAC the opportunity to present the *189 evidence we have stated it is entitled to present.
I further take issue with the majority's determination that EMAC and Northlake were similarly situated. Our jurisprudence has clearly established that "[t]o sustain a claim of impermissible discrimination, the party contesting the zoning action must show that 'a land use permitted to one landowner is restricted to another similarly situated.' " Board of Supervisors v. McDonald's Corp., 261 Va. 583, 591, 544 S.E.2d 334, 339 (2001) (quoting Board of Supervisors v. Rowe, 216 Va. 128, 140, 216 S.E.2d 199, 209 (1975) ). However, as McDonald's clearly establishes, in determining whether the landowners are "similarly situated," the focus of our analysis should be on the properties at issue, not on the landowners. Id. at 591, 544 S.E.2d at 339. In determining that the landowners in McDonald's were not similarly situated, this Court enumerated eight "factors that distinguish the subject property from the comparison sites." Id. Notably, each of these enumerated factors references the "subject property" and how it is different from one or both of the comparison sites; none of the enumerated factors refer to any differences between the landowners. Id. at 591-92, 544 S.E.2d at 339-40. Indeed, it is particularly telling that McDonald's contains virtually no discussion about any of the landowners beyond the fact that they own the properties at issue.
As previously noted, this Court has recognized that a zoning authority may not consider or base its actions on improper factors (i.e., factors that bear "no substantial relation to the public health, safety, morals, or general welfare.") Davis, 200 Va. at 322, 106 S.E.2d at 157. Only the nature of the property and the manner in which it is used relate to public health, safety, morals, or general welfare; the identity of the landowner bears no such relation. Indeed, we have implicitly recognized that a zoning authority's consideration of the identity of a landowner is improper, as such consideration serves only "to restrict competition or to protect an enterprise which may have been encouraged by a prior zoning classification." Id.; see also Benson v. Zoning Board of Appeals, 129 Conn. 280, 27 A.2d 389, 391 (1942) ("[T]he zoning authority has no right to regard the prevention of competition as a factor in administering the zoning law."). Given that zoning laws deal with the manner in **29 which property is used and not who is using the property, it is only logical that, in determining whether landowners are "similarly situated," our focus must necessarily be on a comparison of the properties and not the landowners.
In the present case, neither party has identified any difference in the properties, other than the ownership. It is particularly telling that CUP-2-12 was initially approved with regard to both proposed locations for the signs, indicating that the County agrees that the properties were substantially similar (i.e., both were suitable locations for the signs). It is also worth noting that both properties are located in an area that the County has designated as a Destination Commerce area known as Northlake Park (also referred to as Northlake Subdivision or Northlake Development). Similarly, both properties offer high visibility from the interstate, making them ideal locations for a destination commerce sign. Thus, in my opinion, it is unequivocal that, at least with regard to the portion of the properties where the signs were to be located, both EMAC and Northlake are similarly situated landowners.
Even assuming it is proper to compare landowners, I disagree with the majority's determination that these landowners are not similarly situated. According to the majority, EMAC and Northlake are not similarly situated landowners because CUP-2-12 is only valid with regard to Northlake and void ab initio with regard to EMAC. The majority further asserts that "Northlake and EMAC were not similarly situated with regard to whether granting them [an extension of the CUP] was consistent with the public interest." As I have previously indicated, I believe these findings are premature, as EMAC is entitled to present its evidence before such a determination is made. Additionally, in my opinion, these findings are not supported by the record.
In its complaint, EMAC alleged that the application for CUP-2-12 was "fully consistent *190 with the Comprehensive Plan, in the public interest, and complied with all other requirements. " (Emphasis added.) Further, the CUP application form identifies both Northlake's property and EMAC's property as the subjects of the application. Moreover, the CUP application form expressly allows the "owner or authorized agent of the property " to certify that the application is complete and grant County representatives entry on the property. (Emphasis added.) Thus, it may be fairly **30 inferred that, with regard to the application for CUP-2-12, Northlake and Dominion Land were acting as EMAC's authorized agents. Taking this fact as true, EMAC has met the requirements of Hanover County Code § 26-322 and, at least at this point in the proceedings, it cannot be said that CUP-2-12 is void ab initio with regard to EMAC.[1]
With regard to the majority's finding that granting EMAC an extension of the CUP was not in the public interest, the majority appears to rely on the assumption that the signs at issue in the present case are only for the benefit of Craig Realty and the outlet mall and, therefore, an agreement between EMAC and Craig Realty was a prerequisite for the construction of the signs. Under Hanover County Code § 26-277(e)(4), however, the signs at issue are "for the identification of businesses within the area designated for Destination Commerce." As previously noted, the area designated for Destination Commerce in the present case is Northlake Park, which includes several businesses, including McGeorge Rolling Hills RV,[2] a Harley-Davidson Distribution Center, and, eventually, those located in the outlet mall. Therefore, Hanover County Code § 26-277(e)(4) dictates that the sign is for the benefit of all of those businesses. Even Northlake has recognized this fact, as page 10 of the application for CUP-2-12 expressly states that the signs will promote not only the outlet mall, but the other tenants of the Northlake Park as well. Accordingly, in determining whether the extension of the CUP was in the public's interest, the focus should be on whether a sign on EMAC's property would meet the requirements of Hanover County Code § 26-277(e)(4). Given that there is no evidence one way or the other on this matter, I do not **31 believe that a decision can be made at this point as to whether the extension of CUP-2-12 is in the public interest.[3]
For the foregoing reasons, I cannot join in the decision of the majority. In my opinion, the pleadings, even when the attached documents are considered, sufficiently allege that the properties at issue in the present case are substantially similar and the County's decision to favor one landowner over the other was discriminatory. Accordingly, I would reverse the decision of the trial court *191 and remand the matter for further proceedings.

It is further worth noting that any implication that Northlake could not act as EMAC's authorized agent in applying for CUP-2-12 is unavailing. If such an argument were correct, then, under the majority's logic, Northlake's 2014 extension of CUP-2-12 is also void ab initio. Notably, the record unequivocally establishes that, in 2013, only Dominion Land applied for the extension of CUP-2-12. The record clearly establishes that Dominion Land and Northlake are entirely separate companies and that Northlake is the sole owner of the site for the proposed northern sign. Thus, unless Dominion Land was acting as Northlake's authorized agent, Northlake failed to request an extension for CUP-2-12 before it expired, as is required by Hanover County Code § 26-327(b)(1)(a). As CUP-2-12 expired as to Northlake in 2013, Northlake could not have been granted an extension for CUP-2-12 in 2014. Therefore, if CUP-2-12 is void ab initio as to EMAC, then Northlake's 2013 extension of CUP-2-12 is also void ab initio. If, on the other hand, Northlake's 2013 extension of CUP-2-12 is valid, then CUP-2-12 is also valid as to EMAC.

Notably, McGeorge Rolling Hills RV is located entirely on EMAC's property.

The majority also appears to rely on Craig Realty's decision to move the sign to a less ideal location as demonstrating that the extension of CUP-2-12 is not in the public interest. However, assuming that the public interest implicated by these signs is related to the tax dollars generated by the retailers in Northlake Park, as Hanover County Code § 26-277(e)(4) indicates, it cannot be said that such a move is in the public interest. The record demonstrates that the new location has less visibility. Less visibility means less traffic and less traffic results in fewer tax dollars being generated. Thus, the record demonstrates that such a move is actually not in the public interest. Indeed, it would appear from the record that the only entity that benefits from such a move is Craig Realty.